2006-NMCA-150

148 P.3d 814

### GULF INSURANCE COMPANY, Plaintiff–Appellant,

v.

### Michael J. COTTONE, State Farm Insurance Company, Bernita Nutt, Farmers Insurance Company of Arizona, Maury Mingle, Santiago Sandoval, Paul Atkins, Thomas A. Cootz, and Continental Casualty Company, Defendants–Appellees.

No. 25,354.

Court of Appeals of New Mexico.

Nov. 2, 2006.

Maestas & Suggett, P.C., Paul Maestas, Wayne R. Suggett, Albuquerque, NM, for Appellant.

Simone, Roberts & Weiss, P.A., Randal W. Roberts, Meena H. Allen, Albuquerque, NM, for Appellees Michael Cottone and State Farm Ins. Co.

O'Brien & Ulibarri, P.C., Daniel J. O'Brien, Richard J. Valle, Stacey E. Scherer, Albuquerque, NM, for Appellees Bernita Nutt and Farmers Ins. Co. of Arizona.

Civerolo, Gralow, Hill & Curtis, P.A., Robert J. Curtis, Edward F. Messett, Albuquerque, NM, for Appellee Maury Mingle.

Guebert, Bruckner & Bootes, P.C., Don Bruckner, Jason Alcaraz, Albuquerque, NM, for Appellees Santiago Sandoval and State Farm Ins. Co.

Miller Stratvert P.A., Deron B. Knoner, Albuquerque, NM, for Appellees Paul Atkins and Farmers Ins. Co. of Arizona.

## OPINION

BUSTAMANTE, Chief Judge.

{1} This case requires us to consider the circumstances under which a tortfeasor's insurer may "step into the shoes" of a tort victim to later assert claims of contribution, indemnification, or subrogation against other parties who assertedly bear some responsibility for the victim's injuries.

{2} Brenda Rapp was severely injured in a chain reaction motor vehicle accident. Rapp brought suit against only one of the parties involved in the accident. Gulf Insurance Company (Gulf) settled the suit on behalf of its insured and is now pursuing reimbursement from certain others involved in the accident. Gulf argues that it is entitled to reimbursement as a matter of pure equitable subrogation, or because its insured is jointly and severally liable with the others involved in the accident, or because Rapp assigned her causes of action against the others in the release she signed as part of the settlement. Finding that there is no basis for Gulf's claims, we affirm the district court's grant of summary judgment dismissing Gulf's action.

## BACKGROUND AND PROCEDURAL HISTORY

{3} The facts are straightforward. A tanker truck owned by Gulf's insured, Richard Lobrado, d/b/a El Rio Trucking, Inc., and driven by Rogelio Sarinana collided with a vehicle driven by Jaylene Armstrong at the intersection of State Road 202 and U.S. 70 in Roosevelt County, New Mexico. The truck was carrying liquid carbon dioxide and the collision caused the carbon dioxide to leak from the truck, forming a fog or cloud around the collision site, further obstructing visibility on an already foggy day.

{4} The resulting collisions involved seven vehicles. Shortly after the collision between the truck and Armstrong, Defendant Cottone came upon the accident scene, hit something, and thereafter stopped in the roadway. The second car, driven by Rapp, then collided with Cottone, whose vehicle was obstructing the roadway. Approaching the scene, a third vehicle, driven by Atkins, was struck by a fourth car, driven by Defendant Sandoval.

Atkins' vehicle then struck Rapp's vehicle, shattering the rear window of Rapp's car. The fifth car, driven by Defendant Nutt, also struck the vehicle driven by Atkins and the vehicle driven by Rapp. A sixth vehicle driven by Defendant Mingle, then struck Atkins' vehicle. Finally, Defendant Cootz came upon the scene and collided with two of the vehicles.

{5} All of the individuals involved in the various collisions were generally exposed to the liquid carbon dioxide. After the rear window of her car was broken, Rapp got out of the car and was directly exposed to the liquid carbon dioxide. She sustained severe burn injuries. Rapp filed a lawsuit against Gulf's insured seeking damages for her injuries. Rapp did not join any of the other drivers in her original suit, and Gulf did not seek—at least initially—to have any of the other drivers joined in Rapp's suit. Gulf settled Rapp's lawsuit for $1,700,000. Rapp entered into a release of all claims with Gulf, releasing Gulf's insured of any further liability in exchange for the settlement amount. The specifics of the release are discussed in more detail later in this opinion. After settling with Rapp, Gulf filed suit against the other drivers-with the exception of Armstrong—for negligence, asserting that it was "subrogated by operation of law to Rapp's claims against the Defendants." [1] Defendants responded by filing motions to dismiss and motions for summary judgment. The district court treated the motions as motions for summary judgment, and granted all the motions filed by Defendants, dismissing this case with prejudice. Gulf appeals.

{6} Gulf raises three issues on appeal, arguing that the district court erred in granting summary judgment in favor of Defendants because: (1) Gulf paid the claims of the "original creditor" Rapp, and thus is classically subrogated to her rights; (2) Gulf can seek indemnification/contribution from Defendants for the "enhanced damages" they caused under New Mexico's successive tortfeasor doctrine; and (3) El Rio Trucking was engaged in an inherently dangerous activity

and thus joint and several liability applies permitting Gulf to seek subrogation/contribution from Defendants. As a subargument of its successive tortfeasor theory, Gulf asserts that the release signed by Rapp acted to release all Defendants and thus effected an assignment to it, or created a right of subrogation in it, as to all of Rapp's claims against Defendants.

## STANDARD OF REVIEW

{7} Although some Defendants filed motions to dismiss and others filed motions for summary judgment, we treat the district court's order as a grant of summary judgment. *Knippel v. N. Commc'ns, Inc.*, 97 N.M. 401, 402, 640 P.2d 507, 508 (Ct.App. 1982) (stating that "[w]here matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment"). "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "The issue on appeal is whether [Defendants were] entitled to [judgment] as a matter of law. We review these legal questions de novo." *Id.* We begin with subrogation.

## SUBROGATION

■ {8} Gulf asserts that the settlement agreement between it and Rapp settled all the claims Rapp had against all Defendants. Gulf contends that, having settled the claims on behalf of all Defendants, it may now step into the shoes of Rapp and pursue claims against Defendants for their portion of liability for Rapp's injuries. Gulf bases its argument on an expansive version of the doctrine of equitable subrogation. In Gulf's view, subrogation involves the substitution of one person in place of another with the purpose of allowing responsibility to be spread equitably among all responsible parties. Gulf specifically challenges the notion that "subrogation is limited to permitting an insurer to step into the shoes of its insured." For the reasons set forth later in this opinion, we

---

1. We refer to Defendants collectively as "Defendants" but when necessary for discussion purposes, we identify a specific defendant by name.

conclude that Gulf is not subrogated to the rights of Rapp, and may not seek any type of recoupment from Defendants.

{9} The most common instance of subrogation recognized by New Mexico law is that between an insurer and its insured, allowing the insurer to recover payments against the person who caused the loss. *See Safeco Ins. Co. of Am. v. U.S. Fid. & Guar. Co.*, 101 N.M. 148, 149, 679 P.2d 816, 817 (1984) ("[A]n insurer who pays the claim of its insured . . . is deemed to be subrogated by operation of law to recovery of its payments against the person who caused the loss."). The doctrine of subrogation "allows an insurer who has fully compensated the insured to step into the shoes of the insured and collect what it has paid from the wrongdoer." *Amica Mut. Ins. Co. v. Maloney*, 120 N.M. 523, 527, 903 P.2d 834, 838 (1995). A "subrogated insurer has a pre-existing duty under the insurance policy to pay out benefits to its insured." *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002–NMCA–080, ¶ 21, 132 N.M. 518, 51 P.3d 1172. A variant of insurer/insured subrogation is applied in the suretyship context. *See N.M. State Highway & Transp. Dep't v. Gulf Ins. Co.*, 2000–NMCA–007, ¶ 11, 128 N.M. 634, 996 P.2d 424.

{10} Gulf offers a wholly new variant to New Mexico law: subrogation between the insurer of a tortfeasor and the tortfeasor's victim. Gulf fails to explain how it bridges the gap between itself and the third party to whom it has paid compensation on behalf of its insured. Subrogation between an insurance company and its own insured allows the insurer to recoup what it has paid to its insured from the tortfeasor who harmed its insured. *See Quality Chiropractic*, 2002–NMCA–080, ¶ 21, 132 N.M. 518, 51 P.3d 1172. The insurance company and the insured have a relationship defined by law and contract that supports subrogation. The insurance company has a contractual obligation to compensate its insured for damages caused by third parties. Equity argues in favor of allowing the insurance company to recover from the wrongdoer. That is not the case between Gulf and Rapp. Gulf had no pre-existing duty—contractual or other-

wise—to Rapp. Compensating Rapp for damages caused by its insured does not by itself create the type of relationship between Gulf and Rapp which New Mexico law has recognized to support subrogation.

{11} We recognize that New Mexico has applied subrogation principles in disputes involving insurers only. Gulf relies heavily on one such case, *State Farm Mutual Automobile Ins. Co. v. Foundation Reserve Ins. Co.*, 78 N.M. 359, 431 P.2d 737 (1967), but its reliance is misplaced. In *State Farm*, the plaintiff seeking subrogation was the secondary insurer of a driver involved in an accident. *Id.* at 363, 431 P.2d at 741. The defendant was the primary insurer of the insured driver. *Id.* When the primary insurer denied coverage to the driver, the secondary insurer provided coverage and then sought subrogation against the primary insurer. *Id.* at 361, 431 P.2d at 739. Our Supreme Court held that the secondary insurer was entitled to subrogation from the primary insurer. *Id.* at 363–64, 431 P.2d at 741–42. Both insurance companies in *State Farm* had a contractual duty to provide coverage for the insured driver. *Id.* The issue the Court addressed was how to apply the two insurance policies. *Id.* at 362–63, 431 P.2d at 740–41. The Court simply held that the secondary insurer had paid what the primary insurer should have paid, and thus could step into the shoes of the insured and obtain from the primary insurer what it was obligated to pay. *Id.* at 363–64, 431 P.2d at 741–42. The situation in *State Farm* is unlike the present case because, Gulf is not an insurer of Rapp. Gulf had no contractual duty or responsibility to Rapp. Gulf's only contractual duty was to act in good faith in providing coverage to its insured.

{12} One other facet of New Mexico personal injury law argues strongly against Gulf's position. Adoption by our courts of pure comparative negligence resulted in the abolition of the doctrine of joint and several liability between defendants. *Scott v. Rizzo*, 96 N.M. 682, 684–85, 634 P.2d 1234, 1236–37 (1981) (adopting pure comparative negligence); *Bartlett v. N.M. Welding Supply, Inc.*, 98 N.M. 152, 154–59, 646 P.2d 579, 581–86 (Ct.App.1982) (abolishing joint and several

liability between concurrent tortfeasors), *superseded by statute*, 1987 N.M. Laws ch. 141, § 1, NMSA 1978, § 41–3A–1 (1987), *as stated in Reichert v. Atler*, 117 N.M. 628, 875 P.2d 384 (Ct.App.1992). Following quickly on the heels of *Scott* and *Bartlett*, we held that "*Bartlett* effectively eliminates any basis for contribution among concurrent tortfeasors." *Wilson v. Galt*, 100 N.M. 227, 231, 668 P.2d 1104, 1108 (Ct.App.1983). As we explained in *Wilson*, "[i]f each concurrent tortfeasor is liable only for his respective share of the negligence, no need exists for him to … seek contribution from other tortfeasors or to protect himself against having to contribute [to others]." *Id.*

{13} Viewed from this perspective, Gulf's argument appears to be little more than an attempt to circumvent the policy underpinnings of our pure comparative negligence system. Firmly entrenched as comparative negligence is, we would do well to require a compelling showing of equitable need-perhaps a demonstration of a structural fault in the system—to allow deviation from it. Gulf does not assert that there is anything wrong with the system, and its only equitable argument is that it in fact paid for all of its co-tortfeasors' liability. Even assuming that were true, we see no reason to change the basic assumption of several liability in order to accommodate what would have to be considered—by definition—a voluntary act on Gulf's part.

{14} We now turn to the out-of-state cases relied on by Gulf. We find them unpersuasive because they do not involve concurrent tortfeasors. For example, *Greene v. Waters*, 260 Wis. 40, 49 N.W.2d 919 (1951), involved a claim by the injured party, a passenger in the insured's vehicle, *id.* at 920, who was allowed to seek equitable reimbursement from a successive tortfeasor physician. *Id.* at 921, 923. Similarly, *City of Lauderdale Lakes v. Underwriters at Lloyds*, 373 So.2d 944, 945 (Fla.Dist.Ct.App.1979), involved a suit filed by the original tortfeasor who sought indemnification from the successive tortfeasor physician. The cited cases involved successive tortfeasors. In light of our determination that Defendants are not suc-

cessive tortfeasors, we conclude that these cases are not relevant to the issues before us.

## JOINT AND SEVERAL LIABILITY

{15} Gulf asserts that joint and several liability applies under: (1) the successive tortfeasor doctrine; and (2) the inherently dangerous activity exception to several liability. Where joint and several liability applies, each tortfeasor is liable for the entire injury, regardless of proportionate fault, leaving the defendants to sort out among themselves individual responsibilities based on proportional indemnification or contribution. *Payne v. Hall*, 2006–NMSC–029, ¶ 11, 139 N.M. 659, 137 P.3d 599.

{16} Before turning to Gulf's arguments, we briefly address Defendant Mingle's argument on appeal that Gulf did not preserve the issue of joint and several liability. Defendant Mingle argues that Gulf did not preserve the issue because Gulf did not plead joint and several liability in either its original or amended complaint, and because Gulf in fact denied, in a letter to defense counsel, that it was relying on a theory of joint and several liability. Relying on *Citizens Bank v. C & H Construction & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct.App.1976), Mingle also asserts that Gulf raised the issue for the first time in response to a motion to dismiss and thus should not be allowed to change its legal position in the midst of the lawsuit. Mingle argues that the doctrine of judicial estoppel should be applied, thus prohibiting Gulf from maintaining inconsistent legal theories throughout the litigation. *Id.* We provide a summary of the relevant procedural history and arguments of the parties below.

{17} Gulf did not allege any facts in its original or amended complaint that can support the imposition of joint and several liability. Furthermore, Rapp did not allege in her complaint against Gulf's insured that any Defendants here were jointly or severally liable for her damages. In response to Gulf's amended complaint, Defendants moved for dismissal or summary judgment arguing that under New Mexico's pure comparative fault system, Gulf was only responsible for its share of negligence in causing Rapp's injuries. Defendants pointed out that the only

way Gulf would be entitled to a claim against Defendants is under joint and several liability, which is not the law in New Mexico. Defendants also argued that even if joint and several liability did apply, Gulf is not entitled to contribution, which is governed by NMSA 1978, § 41–3–2(C) (1987) ("A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.").

{18} Gulf asserted in response that joint and several liability does apply under the successive tortfeasor doctrine and the public policy exception to several liability. Section 41–3A–1(C)(4) ("The doctrine imposing joint and several liability shall apply ... to situations not covered [in this subsection] and having a sound basis in public policy."). The district court's ruling on the issue of joint and several liability reflected the parties' arguments. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App. 1987) (stating that "[t]o preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court"). It is clear that Gulf's theory of the case evolved in response to Defendants' arguments. Without condoning Gulf's pleading tactics, we conclude that the issue of joint and several liability is properly before this Court. *See also Saiz v. Belen Sch. Dist.*, 113 N.M. 387, 401, 827 P.2d 102, 116 (1992) (stating that, while "[a] plaintiff is entitled to pursue ... [its] theory of the case[, t]his does not preclude the plaintiff from rebutting any other theory offered by way of defense").

## SUCCESSIVE TORTFEASOR LIABILITY

{19} Gulf's first argument in its effort to establish joint and several liability is that Defendants are successive tortfeasors. Gulf relies on *Lujan v. Healthsouth Rehabilitation Corp.*, 120 N.M. 422, 426, 902 P.2d 1025, 1029 (1995), for the proposition that Gulf's insured, as the original tortfeasor, is jointly liable for the successor tortfeasors' negligence and therefore Gulf is entitled to indemnification from Defendants for the claims it settled with Rapp on their behalf. Our Su-

preme Court recently clarified the law of successive tortfeasor liability in *Payne*, 2006–NMSC–029, ¶ 1, 139 N.M. 659, 137 P.3d 599. We provide an overview of successive versus concurrent tortfeasor liability as discussed in *Payne*, then turn to the facts in this case.

{20} As we have noted, New Mexico is a pure comparative fault state. "[W]hen concurrent tortfeasors negligently cause a single, *indivisible* injury, the general rule is that each tortfeasor is severally responsible for its own percentage of comparative fault for that injury." *Id.* ¶ 11; *see also* § 41–3A–1(A) ("[T]he doctrine imposing joint and several liability upon two or more wrongdoers ... is abolished ... [and t]he liability of any such defendants shall be several."). Several liability is the general rule in New Mexico and there are only narrow exceptions to the rule of several liability. *Payne*, 2006–NMSC–029, ¶ 11, 139 N.M. 659, 137 P.3d 599. The successive tortfeasor doctrine is such an exception. When there are successive tortfeasors, joint and several liability applies, imposing joint and several liability on the original tortfeasor. *Id.* ¶¶ 12–13. For the original tortfeasor to be held jointly and severally liable, the original injury and the subsequent enhancement of the injury must be "separate and causally-distinct injuries." *Id.* ¶ 14 (internal quotation marks, citation, and emphasis omitted). "Thus, under the law of this state only when these elements are found—negligence, causation, and a distinct original injury—may the original tortfeasor be held jointly and severally responsible for the subsequent or enhanced injury as well." *Id.* ¶ 15. Two distinct injuries caused by distinct agents must exist for successive tortfeasor liability to apply. *Id.* A classic example of successive tortfeasor liability is an injury followed by negligent medical treatment that enhances the initial injury. *See Lujan*, 120 N.M. at 426, 902 P.2d at 1029 (finding successive tortfeasor liability where negligent medical treatment provided enhanced injury of plaintiff, causing a separate, causally distinct injury).

{21} Gulf argues that joint and several liability applies here because there were two separate collisions in this case, resulting in two separate injuries. Gulf asserts that

the first collision between its insured and Armstrong caused Rapp to be generally exposed to the fumes associated with the liquid carbon dioxide that leaked from insured's truck. The second collision between Rapp and Defendants resulted from Defendants' failure to use caution while driving in heavy fog, and the subsequent collision enhanced Rapp's injuries by causing Rapp to be directly exposed to liquid carbon dioxide, resulting in more severe burns. According to Gulf, Rapp suffered two distinct injuries: (1) general exposure to carbon dioxide fumes; and (2) direct exposure to liquid carbon dioxide.

{22} Gulf fails to establish that Rapp suffered a distinct original injury caused by the negligence of Gulf's insured, followed by a second, distinct injury or enhancement caused by Defendants. *See Payne*, 2006–NMSC–029, ¶ 12, 139 N.M. 659, 137 P.3d 599. Gulf's insured and Defendants were involved in a serious, but run-of-the mill, chain reaction automobile accident. The fact that there were multiple parties and separate collisions is not enough by itself to establish successive tortfeasor liability. All of Rapp's injuries were caused by exposure to a single agent: liquid carbon dioxide. Rapp suffered a single, indivisible injury from exposure to the same product. *See Lujan*, 120 N.M. at 425, 902 P.2d at 1028 (stating that, "[w]hen the negligent acts or omissions of two or more persons combine to produce a single injury, the law considers those persons concurrent tortfeasors"). The lapse of time between the various chain reaction impacts is not enough—as a matter of law—to deem Defendants successive tortfeasors.

## THE INHERENTLY DANGEROUS ACTIVITY EXCEPTION

{23} Gulf next argues that joint and several liability applies pursuant to Section 41–3A–1(C)(4), the public policy exception to several liability. As a matter of public policy, our courts have applied the inherently dangerous activity exception to several liability in a narrow class of cases involving parties who have a nondelegable duty to control the manner in which peculiarly or inherently dangerous work is performed. *See, e.g., Saiz*, 113 N.M. at 393, 827 P.2d at 108; *Enriquez v. Cochran*,

1998–NMCA–157, ¶¶ 101–110, 126 N.M. 196, 967 P.2d 1136. If a party has the authority to control the manner in which an inherently dangerous activity is conducted, that party has a corresponding nondelegable duty to take the precautions necessary to protect others from any peculiar risk of physical harm arising from such activity. *Saiz*, 113 N.M. at 395, 827 P.2d at 110; *Abeita v. N. Rio Arriba Elec. Coop.*, 1997–NMCA–097, ¶ 15, 124 N.M. 97, 946 P.2d 1108 (noting that defendant had no authority and thus no duty to halt a construction project even though it had other non-delegable duties with regard to on-site safety); *Enriquez*, 1998–NMCA–157, ¶ 103, 126 N.M. 196, 967 P.2d 1136. Joint and several liability is imposed in such a situation in order to encourage persons engaged in inherently dangerous activity to take necessary precautions. *Saiz*, 113 N.M. at 394, 827 P.2d at 109. Thus, when precautions are not taken against a danger inherent in an activity, an employer is jointly and severally liable for harm apportioned to a related party who fails to take precautions that are reasonably necessary to prevent harm arising from the peculiar risk inherent in the activity. *Id.* at 400, 827 P.2d at 115. Strict liability is imposed on the party with authority to control the activity if that party has failed to ensure that the necessary precautions were taken. *Id.* at 397, 827 P.2d at 112 ("[I]t serves the policy underlying nondelegable duties to impose liability ... for injury proximately caused by any failure to take reasonable precautions."). This exception does not apply to the present case, however.

{24} Gulf reasons that its insured was engaged in an inherently dangerous activity and, because the insured could not delegate its heightened duty of care, the insured was "responsible for the entirety of Rapp's injuries and damages." Gulf contends that "[a]t the very least," summary judgment was improper because development of additional facts is necessary before a determination can be made as to whether "*Saiz* type joint and several liability applies to the facts of this case." We do not agree.

{25} We need not reach the question of whether Gulf's insured was conducting an

inherently dangerous activity because even if we did conclude that the activity was inherently dangerous, there is no connection between the activities of the insured as a transporter of carbon dioxide and the activities of Defendants as travelers on the roadway. The "pertinent inquiry is the connection of the parties to the inherently dangerous activity and their respective ability to control or influence how the work is to be done and how the peculiar risks raised by the activity are to be handled." *Enriquez*, 1998–NMCA–157, ¶ 103, 126 N.M. 196, 967 P.2d 1136. Here, there is no connection between Defendants and the allegedly dangerous activity. Gulf's insured did not engage Defendants to carry the carbon dioxide; and Defendants did not engage Gulf's insured to carry the carbon dioxide. Defendants were merely driving down the roadway. Consequently, Defendants had no ability to control or influence how the dangerous activity was undertaken. *See Abeita*, 1997–NMCA–097, ¶ 15, 124 N.M. 97, 946 P.2d 1108 (noting that defendant had no authority and thus no duty to halt a construction project even though it had other non-delegable duties with regard to on-site safety). Absent any connection on which Gulf's insured could premise joint and several liability as to Defendants, Defendants cannot be jointly and severally liable with Gulf's insured.

**THE EFFECT OF THE RELEASE**

{26} Gulf argues that the release Rapp signed in favor of its insured constitutes an "assignment" of all of her rights to Gulf. Gulf contends that the assignment of all of her rights necessarily included an assignment of all her claims against Defendants. This argument runs counter to New Mexico law and the language of the release itself. We conclude that the release did not assign claims against Defendants and did not assign any rights whatsoever, including rights, if any, of subrogation or contribution.

{27} First, the language of the release contains no hint that Rapp was releasing anyone other than Gulf's insured. All of the operative paragraphs of the release refer only to Richard Lobrado, d/b/a El Rio Trucking, Rogelio Sarinana, Gulf, and Atlantic Insurance Company as the defined "Releas-

ees." Gulf's assertion that the release on its face includes others relies on an out-of-context misquote and misreading of the document. The plain language of the release, consistent with the law in New Mexico, releases only Gulf and its insured from any further claims by Rapp. *See Hansen v. Ford Motor Co.*, 120 N.M. 203, 211, 900 P.2d 952, 960 (1995) (holding that "a general release raises a rebuttable presumption that only those persons specifically designated by name or by some other specific identifying terminology are discharged").

{28} Second, in the context of this case, reading the release as Gulf does would run counter to *Quality Chiropractic*, 2002–NMCA–080, ¶ 36, 132 N.M. 518, 51 P.3d 1172, where we upheld the common law rule prohibiting assignment of personal injury claims.

{29} Third, Gulf argues that the release entitles Gulf to contribution from Defendants because it satisfies Section 41–3–2(C). This argument fails because Gulf's insured and Defendants are concurrent, not successive, tortfeasors and therefore contribution among tortfeasors is inapplicable. *See Wilson*, 100 N.M. at 231, 668 P.2d at 1108 (stating that the Contribution Among Tortfeasors Act does not have force in New Mexico with respect to concurrent tortfeasors); *see also Servants of the Paraclete, Inc. v. Great Am. Ins. Co.*, 866 F.Supp. 1560, 1574–75 (D.N.M. 1994) (stating that joint tortfeasor who is severally liable is not entitled to contribution from other joint tortfeasors). Likewise, Gulf's reliance on *Lujan* to support its claim for contribution or indemnification based on the release also fails. *Lujan* involved successive, not concurrent tortfeasors. 120 N.M. at 425–26, 902 P.2d at 1028–29. Gulf's insured was sued for its own negligence, not the negligence of Defendants.

{30} Gulf relies on *Kahrs v. Sanchez*, 1998–NMCA–037, ¶ 25, 125 N.M. 1, 956 P.2d 132, for the proposition that "regardless of whether a transfer is technically called assignment or subrogation or equitable assignment or assignment by operation of law, its ultimate effect is the same: to pass the title to a cause of action from one person to another." (Internal quotation marks and ci-

tation omitted). The language in *Kahrs* is correct in the abstract but it has no application here. *Kahrs* involved a statutorily created assignment of a cause of action in favor of a governmental agency. *Id.* ¶ 2. The issue in the case was whether the claim thus assigned could be reduced on an equitable basis. *Id.* The holding in *Kahrs* says nothing about how the release in this case should be interpreted.

## CONCLUSION

{31} Summary judgment was correctly granted in favor of all Defendants. For the reasons set forth above, we affirm.

{32} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and CELIA FOY CASTILLO, Judges.