2008-NMCA-053

182 P.3d 769

**Charles NIEDERSTADT, individually and as assignee of Johnny Rivera, Plaintiff–Appellant,**

v.

**The TOWN OF CARRIZOZO, Defendant–Appellee.**

No. 26,838.

Court of Appeals of New Mexico.

Jan. 24, 2008.

Certiorari Denied, No. 30,938, March 11, 2008.

Kennedy & Han, P.C., Paul J. Kennedy, Nan E. Erdman, Albuquerque, NM, for Appellant.

David M. Stevens, Attorney at Law, P.C., William N. Griffin, David M. Stevens, Ruidoso, NM, for Appellee.

## OPINION

FRY, Judge.

{1} Plaintiff filed suit in federal court against the Town of Carrizozo's employee, police officer Johnny Rivera, in his individual capacity, for violation of Plaintiff's constitutional rights and for other torts. When Rivera asked the Town of Carrizozo (the Town) to provide a defense for him, the Town refused, and Rivera mounted a pro se defense. Plaintiff and Rivera ultimately settled the federal case such that Rivera agreed to having judgment entered against him in favor of Plaintiff in the amount of $60,000, and Rivera assigned to Plaintiff all of his claims against the Town, including claims for its failure to defend him.

{2} Plaintiff, as Rivera's assignee, then filed the present case against the Town, seeking (1) a declaratory judgment that the Town must satisfy the judgment against Rivera, and (2) damages for the Town's alleged bad faith failure to defend Rivera in the federal lawsuit. The Town filed a motion to dismiss based on Plaintiff's failure to give the Town written notice of Plaintiff's claims against Rivera pursuant to the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to-29 (1976, as amended through 2007). The district court granted the motion, and Plaintiff appeals. We reverse and hold that Plaintiff's failure to give notice under the TCA does not release the Town from its statutory duties under the TCA to defend and indemnify Rivera.

## BACKGROUND

{3} In the federal case, Plaintiff alleged that on August 28, 2003, Rivera approached him as he sat on the porch of his mother's home in the town of Carrizozo, New Mexico. Rivera, with the intent to arrest Plaintiff, grabbed Plaintiff's hair, slammed him into the ground, and twisted his arm behind his back. Plaintiff allegedly suffered both physical and psychological injuries as a result of Rivera's actions.

{4} Plaintiff filed the original action in United States District Court for the District of New Mexico for "violation of his civil rights under 42 U.S.C. § 1983 [ (2000) ], and for assault, battery, false arrest, and false imprisonment, under the New Mexico Tort Claims Act." The complaint in the federal action named Rivera in his individual capacity and alleged that Rivera was "[a]t all times material ... acting within the scope of his employment as a law enforcement officer and under color of state law." Plaintiff did not name the Town or any other governmental entity as a defendant in the federal action.

{5} After Rivera was served with the complaint in the federal action on August 10, 2004, he notified his superior officer, Chief Angelo Vega, of the complaint, and Vega told Rivera he would "look into it." Rivera followed up with Vega, inquiring about the Town providing Rivera with a defense, and Vega informed Rivera that "the matter was being 'taken care of.'" Vega gave Rivera the name and telephone number of the Town's attorney, David Stevens. Rivera called Stevens' office, which instructed Rivera to forward a copy of the complaint, and Rivera complied. Someone in Stevens' office called Rivera to inform him that the Town would not be providing Rivera with a defense, and Rivera then received a brief memorandum from Stevens confirming that fact. Both the Town Clerk and the Mayor of Carrizozo admitted in their affidavits that they saw a copy of the complaint in the federal action on August 26, 2004. According to Stevens' affidavit, the Town, the Mayor, and Vega were all informed of the existence of the complaint on August 26, 2004, and a "decision was made not to provide [ ] Rivera a defense."

{6} When the Town denied Rivera's request for a defense, Rivera proceeded pro se and filed a response to the federal complaint and a consent to proceed before a federal magistrate. Counsel for Plaintiff sent a letter to Stevens and the Town to confirm that they had received notice of the complaint and inquiring whether the Town planned to defend Rivera. Stevens, on behalf of the Town, responded to Plaintiff's counsel directly and stated that the Town would not be providing Rivera with a defense.

{7} At a conference with the federal magistrate, Plaintiff and Rivera negotiated a settlement, which resolved all of Plaintiff's claims. The settlement provided that Rivera would allow judgment to be taken against

him by Plaintiff in the amount of $60,000. In addition, Rivera assigned to Plaintiff all of Rivera's claims against the Town. Plaintiff's counsel sent another letter to Stevens notifying him of the settlement and requesting that Stevens contact the Town's insurer to pay the judgment. Counsel for Plaintiff also indicated that the Town had a duty to defend and indemnify Rivera pursuant to the TCA. § 41–4–4(B), (D).

{8} Plaintiff, as Rivera's assignee, brought the instant action against the Town in state district court. Plaintiff sought both a declaratory judgment that the Town had duties to defend and indemnify Rivera and damages for the Town's alleged bad faith failure to defend. The Town filed a motion to dismiss based on Plaintiff's failure to serve a written notice of tort claim pursuant to the TCA, Section 41–4–16(A), within ninety days of the incident. Plaintiff opposed the motion to dismiss and filed a motion for summary judgment. The district court denied Plaintiff's motion for summary judgment and granted the Town's motion to dismiss for failure to provide notice under the TCA. Plaintiff now appeals.

## DISCUSSION

{9} In determining the applicable standard of review, we observe that the district court apparently considered matters outside the pleadings in ruling on the Town's motion to dismiss. The Town attached two affidavits to its motion to dismiss. "[W]here matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion becomes one for summary judgment." *Gulf Ins. Co. v. Cottone*, 2006–NMCA–150, ¶ 7, 140 N.M. 728, 148 P.3d 814 (internal quotation marks and citation omitted). We therefore treat the district court's order as a summary judgment and consider whether the Town was entitled to judgment as a matter of law, which is a legal question subject to de novo review. *Id.* This question also requires us to interpret the language of the TCA. Interpretation of a statute is also a question of law that we review de novo. *Morgan Keegan Mortgage Co. v. Candelaria*, 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066.

{10} On appeal, Plaintiff argues that (1) he did not have to provide the Town with written notice of his claim against Rivera pursuant to Section 41–4–16(A) because Plaintiff's claim was against Rivera in his individual capacity, not against the Town itself; (2) the Town had a statutory duty to defend Rivera pursuant to Section 41–4–4(B); and (3) the Town had a duty to pay the judgment against Rivera pursuant to Section 41–4–4(D). In analyzing Plaintiff's contentions, we will focus most of our attention on the TCA itself. However, in order to provide context, we begin by setting out several principles applicable to 42 U.S.C. § 1983 claims, because Plaintiff's primary claim against Rivera was such a claim.

## 42 U.S.C. § 1983 Claims

{11} In Plaintiff's original federal action, he alleged, among other claims, that Rivera violated his federal constitutional rights, and he sought relief under 42 U.S.C. § 1983. Plaintiff named Rivera individually as the only defendant in order to impose "*personal* liability upon a government official for actions he [took] under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (emphasis added). By contrast, if Plaintiff had instead sued Rivera in his official capacity, this would have been a way of pleading an action against Rivera's employer, the Town. *Id.* (stating that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent" (internal quotation marks and citation omitted)). However, it is difficult to prevail under a 42 U.S.C. § 1983 claim against a governmental entity itself. In order to do so, a plaintiff must show more than just that the entity's agent violated the plaintiff's rights; the plaintiff must also demonstrate that the injury to the plaintiff resulted from the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

{12} Given these principles, it is clear that Plaintiff could bring a 42 U.S.C. § 1983 action only against Rivera, and not against the Town, unless he had some evidence that the Town had a policy or custom permitting or condoning assaults by its police officers. Because Plaintiff did not name the Town in the federal action, we assume he did not have such evidence. With this in mind, we turn to an analysis of the relevant provisions of the TCA.

**The Tort Claims Act**

 {13} There are three primary provisions of the TCA that govern this case: Section 41–4–16, which we will refer to as the "notice provision"; Section 41–4–4(B), which we will refer to as the "employee defense provision"; and Section 41–4–4(D), which we will refer to as the "employee indemnification provision." Overarching these three provisions is the TCA's legislative declaration, which provides the lens through which we must view all other parts of the TCA. *See Grine v. Peabody Natural Res.*, 2006–NMSC–031, 17, 140 N.M. 30, 139 P.3d 190 (explaining that a court, in construing a statute, must seek to achieve the intent of the legislature).

 {14} The legislative declaration states, in pertinent part:

A. The legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity. On the other hand, the legislature recognizes that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done. Consequently, it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act.

§ 41–4–2(A) (citation omitted). Through this declaration, the legislature expressed its intent to achieve balance between the public policy supporting compensation of those injured by public employees and the public policy militating in favor of limiting government liability. *Cobos v. Doña Ana County Hous. Auth.*, 1998–NMSC–049, ¶ 6, 126 N.M. 418, 970 P.2d 1143.

{15} The TCA's notice provision states:

A. Every person who claims damages from the state or any local public body under the Tort Claims Act shall cause to be presented to the risk management division for claims against the state, the mayor of the municipality for claims against the municipality, ... within ninety days after an occurrence giving rise to a claim for which immunity has been waived under the Tort Claims Act, a written notice stating the time, place and circumstances of the loss or injury.

B. No suit or action for which immunity has been waived under the Tort Claims Act shall be maintained and no court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence.

§ 41–4–16(A), (B) (citation omitted). We observe that Subsection (A) establishes notice requirements applicable to anyone claiming damages "from the state or any local public body," and that Subsection (B) sets out the consequences for failure to provide such notice. *Id.* Those consequences are that no one may maintain an "action against the state or any local public body." *Id.* Significantly, the notice provision says nothing about persons who claim damages from or file actions solely against individual governmental employees.

{16} The TCA's employee defense provision states:

B. Unless an insurance carrier provides a defense, a governmental entity shall provide a defense, including costs and attorneys' fees, for any public employee when liability is sought for:

(1) any tort alleged to have been committed by the public employee while acting within the scope of his duty; or

(2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.

§ 41–4–4(B). We note that Subsection (B)(2) would include a claim under 42 U.S.C. § 1983. *See Risk Mgmt. Div. v. McBrayer,* 2000–NMCA–104, ¶ 7, 129 N.M. 778, 14 P.3d 43 (explaining that Section 41–4–4(B)(2) addresses the defense of public employees accused of civil rights violations).

{17} In addition, the TCA's employee indemnification provision states:

D. A governmental entity shall pay any settlement or any final judgment entered against a public employee for:

(1) any tort that was committed by the public employee while acting within the scope of his duty; or

(2) a violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico that occurred while the public employee was acting within the scope of his duty.

§ 41–4–4(D).

{18} Plaintiff asserts that the employee defense and indemnification provisions require that the Town defend and indemnify its employee, Rivera. The Town argues that the notice provision acts as a limit on a governmental entity's duties under the employee defense and indemnification provisions, and that when a plaintiff fails to give the appropriate written notice of a claim, the entity is released from its statutory duties to provide a defense to and indemnify its employee.

{19} In construing a statute, we seek to achieve the intent of the legislature. *Grine,* 2006–NMSC–031, ¶ 17, 140 N.M. 30, 139 P.3d 190. "We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole." *Id.* (internal quotation marks and citation omitted). We do not read a statute in such a way that "would lead to injustice, absurdity, or contradiction." *Otero v. State,* 105 N.M. 731, 733, 737 P.2d 90, 92 (Ct.App.1987).

{20} As we noted earlier in this opinion, the language of the notice provision does not include language suggesting that notice must be given by a claimant who is suing only a governmental employee. Rather, the language requires a "person who claims damages from the state or any local public body" to give written notice within ninety days of an occurrence. § 41–4–16(A). If such notice is not given, the claimant may not maintain an action and no court shall have jurisdiction to consider an action "against the state or any local public body." § 41–4–16(B).

{21} This Court interpreted the notice provision as being inapplicable to a governmental employee in *Martinez v. City of Clovis,* 95 N.M. 654, 656, 625 P.2d 583, 585 (Ct.App. 1980). In that case, the plaintiff sued the City of Clovis and a Clovis police officer for damages the plaintiff sustained in a collision with the officer. *Id.* at 655, 625 P.2d at 584. In holding that the notice of claim provision did not apply to the plaintiff's claims against the employee police officer, we made reference to the TCA's employee defense and indemnification provisions and observed that

merely because [the employee defense and indemnification provision] imposes upon the governmental entity for which the employee works the obligation to provide a defense to its employee and pay any settlement or judgment reached, it does not convert a public employee ... into a local public body, a governmental entity, or the state or state agency [for purposes of the notice provision].

*Id.* at 656, 625 P.2d at 585 (internal quotation marks and citation omitted); *see also Frappier v. Mergler,* 107 N.M. 61, 65, 752 P.2d 253, 257 (Ct.App.1988) (holding that notice provision does not apply to individual governmental employees).

{22} The Town argues that *Martinez* does not apply because its holding was limited in *Otero.* In *Otero,* the plaintiff, on behalf of the plaintiff's decedent, originally brought suit in federal court against a state penitentiary guard in his individual capacity, alleging

federal civil rights violations under 42 U.S.C. § 1983. *Otero*, 105 N.M. at 732, 737 P.2d at 91. In the federal lawsuit, the plaintiff served the guard with process, but the guard made no appearance in the suit, and a default judgment was entered against him. *Id.* Neither the state nor any other governmental entity had actual notice of the federal lawsuit, and the plaintiff did not file a written notice of claim pursuant to Section 41–4–16. *Id.* The plaintiff then brought suit in the state district court, asking that the state and the department of finance and administration (DFA) be required to pay the default judgment under the TCA's employee defense provision. *Id.* The district court entered summary judgment in favor of the state and DFA.

{23} In construing the TCA, this Court in *Otero* affirmed the district court. *Id.* at 734, 737 P.2d at 93. We held that even though the notice provision does not require that notice be given to a governmental entity employer when an individual employee is sued, "it does not necessarily follow that the state must pay [the] plaintiff's judgment." *Id.* at 732–33, 737 P.2d at 91–92. We further stated that

> [i]n the context of a carefully drafted statute that: waives immunity; contains means for covering the risks; provides methods for those entities covering the risks to investigate and defend claims; and contains other stringent limitations on payment, the legislature surely could not have intended that governmental entities pay judgments arising out of the default of one alleged to be a public employee when the governmental entity did not have the benefit of any of the statutory provisions integral to the whole scheme.

*Id.* at 733, 737 P.2d at 92.

{24} At first glance, *Otero* seems determinative of the issue presented in this case. However, we note two meaningful distinctions between the facts of *Otero* and the present case. First, in *Otero*, the plaintiff failed to provide written notice *and* the governmental entities did not have actual notice of the lawsuit. *Id.* at 732, 737 P.2d at 91. In this case, Plaintiff concedes that he did not provide the statutory notice, but he argues

that the Town had actual notice of the lawsuit because Rivera sought a defense from his employer soon after he was served in the federal action. Indeed, the attorney for the Town said that a "decision was made not to provide Mr. Rivera a defense." Thus, unlike the governmental entity defendants in *Otero*, the Town had the "opportunity to participate [in and] defend the lawsuit." *Id.* at 733, 737 P.2d at 92.

{25} The second distinction between this case and *Otero* is that in *Otero* the plaintiff, after obtaining a default judgment in the federal action against the state employee, brought suit in state court solely to require the employer to pay the judgment. *Id.* at 732, 737 P.2d at 91. Like the plaintiff in *Otero*, Plaintiff here won a judgment in the federal action. This case, however, was not brought merely to obtain payment of the judgment from the Town. As an assignee of Rivera, Plaintiff also claims damages for the Town's bad faith failure to defend him. This fact highlights the tension between the competing policies embodied in our TCA. Although *Otero* stressed the importance of not exposing a governmental entity to liability for claims of which it had no statutory or actual notice, we believe the TCA also reflects the important policy of protecting a governmental employee from the expense and stress of mounting a defense and satisfying a judgment. By requiring governmental employers to defend and indemnify their employees, the TCA advances the legislature's intent that the TCA balance the limiting of governmental liability against the policy favoring compensation of those injured by governmental employees. *See Cobos*, 1998–NMSC–049, ¶ 6, 126 N.M. 418, 970 P.2d 1143. We therefore distinguish this case from *Otero*.

{26} We do not overrule the holding in *Otero*. Its holding would apply if an employee failed to notify and request a defense from his or her governmental employer if the employee were sued individually. However, under the circumstances of this case, where the employer does not dispute that its employee was acting within the scope of his employment, and where the employee notified his employer that a suit had been filed against

him, asked the employer to provide a defense, and followed up on the request, all within the time for filing an answer to the complaint, the TCA requires the employer to defend and indemnify its employee.

{27} The Town argues that reading Section 41-4-4 as requiring it to defend and indemnify Rivera allows Plaintiff, by creative lawyering, to circumvent the notice provision, thus leading to "an absurdity ... clearly contrary to the legislature's intent." We disagree. The employee defense and indemnification provisions are not connected to the notice provision, as the Town suggests. The TCA's employee defense and indemnification provisions deal with the relationship between the governmental entity and its agents, employees, and officers in the event the employee is faced with a lawsuit for his or her actions in "the scope of duty," whereas the notice provision governs the responsibility of a claimant to give the governmental entity notice when the claimant seeks damages from the entity.

## CONCLUSION

{28} For the foregoing reasons, we reverse the summary judgment entered in favor of the Town. We remand for entry of summary judgment in Plaintiff's favor declaring that the Town had a duty to defend Rivera and has a duty to pay the judgment against Rivera, and for further proceedings consistent with this opinion. We express no opinion about the viability of Plaintiff's claim for bad faith failure to defend.

{29} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID, and JAMES J. WECHSLER, Judges.