This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

No. A-1-CA-36816

**JAMES HAMILTON CONSTRUCTION CO.,**

Plaintiff-Appellant,

v.

**TOM CHURCH, Cabinet Secretary for the NEW MEXICO DEPARTMENT OF TRANSPORTATION, in his official capacity; and FISHER SAND & GRAVE-NEW MEXICO, INC.,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Sarah M. Singleton, District Judge**

Holt Mynatt Martinez P.C.
Jeffrey A. Dahl
Las Cruces, NM

for Appellant

Stephen P. Thies, Assistant General Counsel
Elizabeth J. Travis, Deputy General Counsel
Santa Fe, NM

for Appellee New Mexico Department of Transportation

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Timothy C. Holm
Jeremy K. Harrison
Albuquerque, NM

for Appellee Fisher Sand & Gravel – New Mexico, Inc.

MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** In this case, we review the actions of the New Mexico Department of Transportation (NMDOT) in promulgating an administrative rule allowing the NMDOT to consider factors other than the lowest bid in its award of construction contracts. James Hamilton Construction Company (JHCC) contends that the district court erred when it dismissed its complaint for a declaratory judgment seeking to invalidate the rule, because the rule is not in harmony with the New Mexico Procurement Code and the application of the rule is arbitrary and capricious. Finding no error on the part of the district court, we affirm.

**BACKGROUND**

**{2}** In 2014, the NMDOT sought approval from the Federal Highway Administration (FHWA) to participate in an initiative known as the "Special Experimental Program No. 14" (SEP-14). The SEP-14 encouraged states, with the approval of the FHWA, to establish innovative contracting practices, intended to reduce life cycle costs of construction projects to state highway administrations while maintaining product quality and an acceptable level of contractor profitability. To carry out the SEP-14 in New Mexico, the NMDOT requested approval from the FHWA to implement a system to evaluate contract bids that took into consideration performance-based factors such as contractor past performance and timely project completion, in addition to bid amount, to evaluate bids to perform construction contracts. These performance-based factors would then be applied to adjust each bid to give an advantage to contractors who had performed well on past construction contracts and, as such, could possibly adjust the order of bidders.

**{3}** In 2015, after receiving the FHWA's approval, the NMDOT promulgated the "Contractor Prequalification Rule" (the Rule), 18.27.5 NMAC (2014).[1] The Rule implemented the innovative contracting practice that, after considering the performance-based factors, may result in the award of the contract to a bidder who did not submit the lowest monetary bid, *see* 18.27.5.7(D) NMAC, and created a comprehensive "contractor prequalification system that directly rewards good performers and encourages poor performers to improve." 18.27.5.6 NMAC.

**{4}** In 2016, the Rule was used to evaluate bids received on a highway road construction project in Eddy County, New Mexico. JHCC's first amended complaint asserts it was the lowest monetary bidder, but after applying the Rule, the order of the bids was modified and the contract was instead awarded to Fisher Sand & Gravel – New Mexico, Inc. (Fisher). JHCC filed a post-award bid protest that was rejected by a NMDOT hearing officer. JHCC advises that it successfully appealed the hearing officer's decision to district court (Protest Case), but that Fisher was allowed to continue with the

---

1Throughout this opinion, our citations to 18.27.5 NMAC are to the 2014 version of the code.

construction because the project had already commenced. The district court's ruling on the bid protest is not the subject of this appeal and we do not consider it.

**{5}** Simultaneous with its appeal of the hearing officer's decision, JHCC filed a complaint for declaratory judgment in district court in this matter, seeking an order to force the NMDOT to immediately cease use of the Rule. JHCC also filed an application for a temporary restraining order, a preliminary injunction, and stay. In its amended complaint for declaratory relief, JHCC named the NMDOT Secretary Tom Church and Fisher as defendants.[2] The NMDOT filed a motion to dismiss, arguing in relevant part that JHCC failed to state a claim, pursuant to Rule 1-012(B)(6) NMRA. The district court denied the temporary restraining order, preliminary injunction, and stay, and granted the NMDOT's motion to dismiss.

**{6}** The essence of JHCC's arguments on appeal are as follows: (1) the Rule is not "in harmony" with the statutory authority; and (2) NMDOT's application of the prequalification factor is arbitrary and capricious. After due consideration of these arguments as set forth below, we affirm.[3]

## DISCUSSION

**{7}** "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. "A Rule [1-0]12([B])(6) motion is *only* proper when it appears that [the] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Id.* (internal quotation marks and citation omitted). "In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of the sufficiency of the complaint." *Id.* Further, resolving the question of whether the Rule is consistent with the statutory authority involves a matter of statutory interpretation, which is "a question of law that we review de novo." *Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶ 9, 143 N.M. 786, 182 P.3d 769.

## I. The Procurement Code Allows NMDOT to Consider Factors Other Than the Lowest Monetary Bid in Awarding Construction Contracts

**{8}** JHCC's appeal requires that we first examine the extent to which the Rule is consistent with its statutory authority. "[A]n administrative agency has no power to

---

2On appeal, Fisher responded to JHCC's brief in chief with a pleading indicating that it took no position on JHCC's appeal.

3On appeal, quoting *Holguin v. Elephant Butte Irrigation District*, 1977-NMSC-073, ¶¶ 16-17, 91 N.M. 398, 575 P.2d 88, the NMDOT contends that the failure to join the FHWA renders the suit defective and "raises a question as to the court's jurisdiction to hear the case." *Holguin*, however, was *overruled by C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.*, 1991-NMSC-049, ¶ 8, 112 N.M. 89, 811 P.2d 899, which concluded that "[u]nder the current rule, we do not consider the test of indispensability to be jurisdictional, and we hereby overrule precedent to the contrary." *See Sims v. Sims*, 1996-NMSC-078, ¶ 53, 122 N.M. 618, 930 P.2d 153. Because the failure to join FHWA is not a jurisdictional bar to JHCC's suit, we decline to consider it further.

create a rule or regulation that is not in harmony with its statutory authority." *Romero v. Laidlaw Transit Servs., Inc.*, 2015-NMCA-107, ¶ 19, 357 P.3d 463 (internal quotation marks and citation omitted). "If there is a conflict or inconsistency between statutes and regulations promulgated by an agency, the language of the statutes shall prevail." *Id.* (internal quotation marks and citation omitted).

**{9}** "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 11, 309 P.3d 1047 (internal quotation marks and citation omitted). When presented with a question of statutory construction, we observe the following general principles: (1) "the plain language of a statute is the primary indicator of legislative intent," where we are to "give the words used in the statute their ordinary meaning unless the [L]egislature indicates a different intent," and this Court "will not read into a statute or ordinance language which is not there, particularly if it makes sense as written"; (2) this Court will "give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them"; and (3) "where several sections of a statute are involved, they must be read together so that all parts are given effect." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599 (internal quotation marks and citations omitted). Further, when "interpreting sections of the administrative code, we employ the same rules as used in statutory construction." *Romero*, 2015-NMCA-107, ¶ 20. "Administrative regulations should be construed in harmony with related statutory provisions if possible." *Id.*

## A.     The Promulgated Rule Is in Harmony With the Statutes

**{10}**    The Legislature has provided that "[p]urchasing by public entities in New Mexico is governed by the Procurement Code[.]" *Planning & Design Sols. v. City of Santa Fe*, 1994-NMSC-112, ¶ 7, 118 N.M. 707, 885 P.2d 628; *see also* Procurement Code, NMSA 1978, §§ 13-1-28 to -199 (1984, as amended through 2020). "The purposes of the Procurement Code are to provide for the fair and equitable treatment of all persons involved in public procurement, to maximize the purchasing value of public funds and to provide safeguards for maintaining a procurement system of quality and integrity." Section 13-1-29(C). The Procurement Code provides that "[a] contract solicited by competitive sealed bids shall be awarded with reasonable promptness by written notice to the *lowest responsible bidder.*" Section 13-1-108 (emphasis added). A responsible bidder is one who "submits a responsive bid and who has furnished, when required, information and data to prove that his financial resources, production or service facilities, personnel, service reputation and experience are adequate to make satisfactory delivery of the services, construction or items of tangible personal property described in the invitation for bids." Section 13-1-82.

**{11}**    The Legislature has also authorized NMDOT to "construct, reconstruct and maintain all state highways by work done with its own forces or let the work on contract after advertising for bids subject to the approval of the state [transportation] commission." NMSA 1978, § 67-3-43 (1983). In furtherance of its duties, the NMDOT "may adopt rules and regulations providing . . . for the determination of a responsible

bidder pursuant to the provisions of the [Procurement Code]." *Id.* Further, the NMDOT Secretary "may reject any or all bids if they are unbalanced or for any other good reason, but otherwise he shall award the contract to the lowest responsible bidder allowing for such preference as may be provided by law." *Id.*

**{12}** Here, the NMDOT has promulgated a rule providing that "[i]nnovative contracting is an alternate form of competitive bidding consistent with federal and state procurement laws that can result in work being awarded to a responsible bidder that may not submit the lowest monetary bid." 18.27.5.7(D) NMAC. Under the Rule, responsibility is defined as "an objective determination based on past performance by the [NMDOT] of the contractor's capability in all respects to perform fully and make satisfactory delivery the requirements of the contract including the integrity and reliability that will assure good faith performance." 18.27.5.7(R) NMAC. The objective of the rule is to make use of a prequalification system that "directly rewards good performers and encourages poor performers to improve." 18.27.5.6 NMAC.

**{13}** To implement its objective, the Rule employs a detailed procedure and calculation to assign a prequalification factor to contractors seeking to be prequalified by the NMDOT in anticipation of seeking the performance of work. *See* 18.27.5.8 NMAC ("Prequalification procedure"); 18.27.5.11 NMAC ("Prequalification calculation"). To calculate a contractor's yearly prequalification factor, the NMDOT gathers "prime contractor performance data from each project upon project closure." 18.27.5.11 NMAC. The performance data used to determine the prequalification factor "are claims, disincentives [assessed], liquidated damages [assessed], non-conformance[s assessed], safety [issues], and subcontractor [payment]." 18.27.5.11(A) NMAC. The Rule provides that "[t]he contractor's yearly performance factor is the sum of the individual performance factors multiplied by their associated percentages." 18.27.5.11(I) NMAC; 18.27.5.11(B)-(H) NMAC (describing how to calculate the performance factors and providing their associated percentages). The prequalification factor is then used to calculate a rolling average, "covering a period of three years." 18.27.5.11(M)(1) NMAC. "Each rolling average year will be assigned a weighting factor and will be multiplied by the appropriate weighting factor starting with the most recent year." *Id.* The sum of the weighted rolling averages of the most recent year and the two preceding years is divided by the sum of the weighting factors to produce the prequalification factor rolling average. 18.27.5.11(M)(2)-(5) NMAC.

**{14}** Although the Rule specifies the data to be considered and contains procedures to determine the lowest responsible bidder that are not expressly provided for in Section 67-3-43 or in the Procurement Code, we note that the plain language of the Procurement Code contemplates the NMDOT's consideration of factors beyond the lowest bid amount, including factors specific to each bidder, such as a bidder's "financial resources, production or service facilities, personnel, service reputation and experience[.]" Section 13-1-82. We do not see any conflict between the factors contemplated by the Procurement Code and those considered by the NMDOT to calculate a contractor's prequalification factor. *See* § 67-3-43 (authorizing the NMDOT

to "adopt rules and regulations providing . . . for the determination of a responsible bidder pursuant to the provisions of the [Procurement Code]").

**{15}** Nevertheless, JHCC asserts that the Rule and Procurement Code are in conflict because by statute, the critical piece of the procurement process is to assure that the project is cost effective. Although JHCC asserts that the lowest monetary bid is the primary factor in awarding bids, the NMDOT's award decision is nonetheless determined according to the "lowest responsible bidder." *See* §§ 67-3-43, 13-1-108. We assume that the Legislature intentionally included the term "responsible" when crafting the language of the Procurement Code and Section 67-3-43, and left room for the administering agencies to further refine the definition of "responsibility" in promulgating their rules. *See Am. Fed'n of State, Cty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 ("Statutes must also be construed so that no part of the statute is rendered surplusage or superfluous[.]" (internal quotation marks and citation omitted)); *see also Rio Grande Chapter of Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 17, 133 N.M. 97, 61 P.3d 806 ("[W]e must remain mindful that in resolving ambiguities in the statute or regulations which an agency is charged with administering, [courts] generally will defer to the agency's interpretation if it implicates agency expertise." (internal quotation marks and citation omitted)). Indeed, the factors identified in 18.27.5.11(A) NMAC to calculate a contractor's prequalification factor (claims made, disincentives, liquidated damages, non-conformities, safety issues and subcontractor payments) appear directed at the "information and data" identified in the Procurement Code to establish the contractor is a "responsible bidder" eligible to perform contracts for New Mexico public entities. Section 13-1-82. JHCC does not point to any authority that mandates contracts be solely awarded to the lowest monetary bidder, and where no such supporting authority is provided, we may assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

**{16}** JHCC also contends that any bidder who submits a bid is "responsible," because in order to submit a bid, the contractor is already deemed responsible. Not only is this argument contradicted by the relevant statutory authority, *see* § 67-3-43 (authorizing the transportation commission to "adopt rules and regulations providing . . . for the determination of a responsible bidder pursuant to the provisions of the [Procurement Code]"), but JHCC again provides no authority to support its argument. *See Curry*, 2014-NMCA-031, ¶ 28. In light of the foregoing, we conclude the Rule is consistent with the statutory authority. *See Romero*, 2015-NMCA-107, ¶ 20 ("Administrative regulations should be construed in harmony with related statutory provisions if possible.").

## B.    The Rule Is Not Arbitrary and Capricious

**{17}** Having determined that the Commission has the authority to promulgate rules for procurement purposes, and that the Rule does not conflict with the language of the statute, we address JHCC's argument that the Rule is arbitrary and capricious.

**{18}** In support of its claim that the Rule is arbitrary and capricious, JHCC points us to the district court's ruling in the Protest Case where it contends it successfully challenged the Rule. JHCC asserts, "one [district] court [has] already determined that [the Rule], as applied in the Protest Case, was arbitrary, capricious, subjective[,] and not supported by substantial evidence[,]" and thus we should conclude the same.[4]

**{19}** On appeal, JHCC asserts the Rule is arbitrary and capricious for two primary reasons: (1) the Rule is not cost-effective for the State; and (2) the Rule ignores the legislative mandates requiring projects to be cost-effective.

**{20}** "The party challenging a rule adopted by an administrative agency carries the burden of showing that the rule is arbitrary or capricious by demonstrating that the rule's requirements are not reasonably related to the legislative purpose." *Earthworks' Oil & Gas Accountability Project v. N.M. Conservation Comm'n*, 2016-NMCA-055, ¶ 11, 374 P.3d 710 (alteration, internal quotation marks, and citation omitted). "We define arbitrary and capricious acts as those that may be considered [willful] and unreasonable, without consideration, and in disregard of the facts and circumstances." *Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 7, 288 P.3d 902 (alteration, internal quotation marks, and citation omitted).

**{21}** The work plan submitted to the FHWA seeking acceptance to the SEP-14 program indicates the NMDOT sought to rectify the deficiencies in the then-current rule, which the NMDOT conceded "provide[d] no mechanism to ensure the maximum benefit to the taxpayer through quality projects and efficient management of the NMDOT." The record also makes clear that the FHWA reviewed and approved the NMDOT "Contractor Performance-based Prequalification and Procurement System." The record indicates that the NMDOT intended the Rule to focus on "past performance as a measure of contractor responsibility," which would result in maximizing quality, cost, and efficiency in construction. Additionally, the record shows the NMDOT will submit to the FHWA quarterly and annual reports related to the SEP-14, as well as undergo periodic evaluations to assess its efficiency. Taken together, we cannot conclude that NMDOT acted arbitrarily or capriciously. *See Wilcox*, 2012-NMCA-106, ¶ 7.

**{22}** Finally, JHCC asserts that the Rule does not conform to the federal and state requirements of 23 U.S.C. § 112(b)(1) (2018) and Section 13-1-29(C). As stated above, we hold that the Rule is not in conflict with the state statutory authority. Because JHCC did not fully develop its argument regarding a conflict with federal statutory authority, nor cite any authority in support of its contention, we decline to review this undeveloped argument. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (explaining that appellate courts are under no obligation to review unclear or undeveloped arguments).

## CONCLUSION

---

4Though repeatedly referring to the Protest Case in JHCC's briefing, this case is not on appeal and we will not consider it in this matter. While this Court can take judicial notice of other district court decisions, we are not bound by rulings of a district court and it is the appellant's duty to develop a record for this Court.

**{23}** For the foregoing reasons, the complaint fails to state a claim upon which relief can be granted. We affirm.

**{24}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**JENNIFER L. ATTREP, Judge**