2002-NMSC-028

54 P.3d 71

Felicita VALDEZ, Sadie Moya, and Reber Boult, on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,

v.

STATE of New Mexico; Robert Perry, Bernalillo County; Chaves County; Colfax County; Curry County; Grant County; Guadalupe County; Lea County; Los Alamos County; Luna County; Otero County; Quay County; Rio Arriba County; Roosevelt County; San Juan County; San Miguel County; Sandoval County; Taos County; City of Espanola; US West, Inc.; PCS America, Inc.; Evercom Systems, Inc.; Gateway Technologies, Inc.; Public Communications Services, Inc.; Silverado Communications, Inc.; Security Telecom Corporation; T–Netix, Inc.; Ameritel Communications, Inc.; Invision Telecom, Inc.; McLeod Usa Telecommunications Services, Inc.; and John Does I–X, Defendants–Appellees.

No. 26,830.

Supreme Court of New Mexico.

Sept. 4, 2002.

## OPINION

FRANCHINI, Justice.

{1} Plaintiff–Appellants (Plaintiffs), recipients of collect telephone calls from relatives

incarcerated in several state and county correctional facilities throughout the state, brought a suit for damages and injunctive relief against governmental and telephone service company Defendants–Appellees (Defendants). Plaintiffs' complaint alleged nine counts against Defendants. The district court, under Rule 1–012(B)(6) NMRA 2002, dismissed Plaintiffs' claims for failure to state a claim. Plaintiffs appealed the district court's decision to the Court of Appeals which certified the matter to the New Mexico Supreme Court. *See* NMSA 1978, § 34–5–14(C) (1972) and Rule 12–606 (2002). We accepted certification of the appeal and affirm the district court.

## I. Facts and Procedure

{2} Plaintiffs alleged in their complaint that Defendants entered into illegal agreements in which the telephone service companies were granted exclusive rights to provide collect telephone service at a higher rate than rates provided to the public. Plaintiffs argue that in return for entering into these agreements, the government correctional facilities received a commission paid by the telephone service providers that was calculated on the amount billed to the service provider from collect calls placed by inmates in their facilities. Plaintiffs' complaint sought damages and injunctive relief under the New Mexico Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –22 (1967, as amended through 1999) (NMUPA) (Count I); the New Mexico Antitrust Act, NMSA 1978, §§ 57–1–1 to –17 (1979, as amended through 1996) (Count II); and for unjust enrichment (Count III); economic compulsion (Count IV); constructive fraud (count V); illegality (Count VI); violation of separation of powers by unlawful taxation (Count VII); unlawful special tax (Count VIII); and unlawful taking (Count IX).

{3} The following motions to dismiss were filed: 1) State and Robert Perry's (Secretary of the New Mexico Department of Corrections) motion to dismiss for lack of subject matter jurisdiction and failure to state a claim under Rules 1–012(B)(1) and (6); 2) City of Espanola and County of Rio Arriba's motion to dismiss under Rules 1–012(B)(1)

and (6); and 3) U.S. West, Inc.; At & T Communications, Inc.; Evercom Systems, Inc.; Gateway Technologies, Inc.; Public Communications Services, Inc.; and the Security Telecom Corporation's motion to dismiss under Rule 1–012(B)(6). The district court granted the motions for failure to state a claim and dismissed Plaintiffs' claims under the filed rate doctrine, the primary jurisdiction doctrine, and sovereign immunity.

## II. Discussion

### A. Standard of Review

■ {4} A district court's decision to dismiss a case for failure to state a claim under Rule 1–012(B)(6) is reviewed de novo. *Wallis v. Smith*, 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682, *cert. denied*, 130 N.M. 254, 23 P.3d 929 (2001). "A Rule 12(b)(6) motion is *only* proper when it appears that plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Envtl. Improvement Div. v. Aguayo*, 99 N.M. 497, 499, 660 P.2d 587, 589 (1983). In reviewing a district court's decision to dismiss for failure to state a claim, we accept all well-pleaded factual allegations in the complaint as true and resolve all doubts in favor of sufficiency of the complaint. *Id.; Wallis*, 2001–NMCA–017, ¶ 6, 130 N.M. 214, 22 P.3d 682.

### B. Dismissed Claims Against Governmental and Telephone Service Provider Defendants

#### 1. Filed Rate Doctrine

■ {5} The district court held that Plaintiffs' claims against governmental and telephone service provider Defendants for damages, restitution, or imposition of a constructive trust were barred by the filed rate doctrine. The filed rate doctrine was first established by the United States Supreme Court in *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 163–4, 43 S.Ct. 47, 67 L.Ed. 183 (1922), when the Court barred plaintiff's antitrust claim based on price fixing because a regulatory agency had approved defendant's rates which happened to be higher than the competitive market. The filed rate doctrine is a doctrine that allows for "any 'filed

rate'—that is, one approved by the governing regulatory agency—[to be] per se reasonable and unassailable in judicial proceedings brought by ratepayers." *Miranda v. Michigan,* 141 F.Supp.2d 747, 757 (E.D.Mich.2001) (quoting *Wegoland Ltd. v. NYNEX Corp.,* 27 F.3d 17, 18 (2d Cir.1994)). As the district court noted in its ruling, "[t]he heart of the filed rate doctrine is not that the rate mirrors a competitive market, nor that the rate is reasonable or thoroughly researched, it is that the filed rate is the only *legal* rate." *Daleure v. Kentucky,* 119 F.Supp.2d 683, 689 (W.D.Ky.2000). The policy behind the filed rate doctrine is to prevent price discrimination and to preserve the role of agencies in approving rates and to keep courts out of the rate-making process. *Arsberry v. Illinois,* 117 F.Supp.2d 743, 744 (N.D.Ill.2000). Since its inception, the filed rate doctrine has not been changed or qualified by the Supreme Court. *See Daleure,* 119 F.Supp.2d at 689. In light of the history behind the filed rate doctrine, we believe that this Court "should think deeply before avoiding its application without good reason." *Id.* In New Mexico, the New Mexico Public Regulation Commission (NMPRC) regulates intrastate calls. NMSA 1978, § 63–9A–8(A) (1987). The NMPRC has exempted inmate telephone services from several of its regulations and has authorized the rates at issue. We hold that under the filed rate doctrine these rates are legal and that Plaintiffs' claims for damages, restitution, or imposition of a constructive trust were properly dismissed by the district court.

### 2. Primary Jurisdiction Doctrine

■ {6} The district court concluded that Plaintiffs' claims for injunctive or future relief against governmental and telephone service provider Defendants were barred by the primary jurisdiction doctrine. The primary jurisdiction doctrine is a doctrine by which courts that have jurisdiction defer to the expertise of an administrative body. *See Norvell v. Ariz. Pub. Serv. Co.,* 85 N.M. 165, 170, 510 P.2d 98, 103 (1973). The doctrine is concerned with preserving the relationship between courts and administrative agencies. *Id.* Under this doctrine, "the judicial process is suspended pending referral of such issues to the administrative body for its views." *Id.* In New Mexico, we have recognized that "this Court is not a ratemaking body and [w]e recognize the expertise of the commission in public utility management." *Comm'n Investigation v. State Corp. Comm'n,* 1999–NMSC–016, ¶ 15, 127 N.M. 254, 980 P.2d 37 (quoted material and quotation marks omitted). In the present matter, the NMPRC has the expertise to determine whether the collect call telephone rates provided at the correctional facilities are reasonable. Under the primary jurisdiction doctrine, we conclude that it was proper for the district court to defer to the expertise of NMPRC. Therefore, we affirm the district court's decision to dismiss Plaintiffs' claims for injunctive or future relief under the primary jurisdiction doctrine.

■ {7} Any injunctive or future relief claims are also moot under recent legislation passed by the New Mexico legislature. This recent legislation requires any contract entered into by the telephone service providers and private or public correctional facilities to provide inmates with telephone services at the lowest rate. *See* 2001 NM Laws, ch. 33, 115. It also prohibits telephone service providers from paying a correctional facility a "commission or other payment" based upon these contracts. *Id.* In light of this recent legislation, we hold that any claims for injunctive or future relief in the present case are moot.

### 3. New Mexico Unfair Practices Act (Count I) and New Mexico Antitrust Act (Count II)

■ {8} The district court concluded that the City of Espanola, Rio Arriba County, and the telephone service provider Defendants could not be liable under the NMUPA and the New Mexico Antitrust Act.[1] The district court held that under NMSA 1978, § 57–12–7 (1999) of the NMUPA, any laws adminis-

---

1. Plaintiffs are not appealing the district court's dismissal of Count I and Count II for Defendants State and Robert Perry. Plaintiffs concede that the State and Robert Perry are not liable under NMUPA and the New Mexico Antitrust Act.

tered by a regulatory body are expressly permitted. Section 57–12–7 states that "[n]othing in the Unfair Practices Act shall apply to actions or transactions expressly permitted under laws administered by a regulatory body of New Mexico or the United States. . . ." The district court also dismissed claims brought under the New Mexico Antitrust Act against the City of Espanola, Rio Arriba County, and the telephone service provider Defendants finding that these claims were specifically barred under NMSA 1978, § 57–1–16(A) (1987) of the Antitrust Act. Section 57–1–16(A) is similar to Section 57–12–7 of the NMUPA in that it states that "[n]othing contained in the Antitrust Act is intended to prohibit actions which are . . . clearly and expressly authorized by any . . . regulatory body . . . ." In New Mexico, the NMPRC is authorized to "fix, determine, supervise, regulate and control all charges and rates of . . . telephone . . . companies . . . within the state." NMSA 1978, § 63–7–1.1(A)(1) (1998). As discussed earlier, the collect call telephone rates at issue are under the primary jurisdiction of the NMPRC. Because the rates at issue are under the primary jurisdiction of the NMPRC, a regulatory agency, these rates are expressly permitted under Section 57–12–7 of the NMUPA and Section 57–1–16(A) of the Antitrust Act. Therefore, Defendants did not violate NMUPA or the New Mexico Antitrust Act, and we agree with the district court's decision that Counts I and II were properly dismissed.

## C. Dismissed Claims Against Governmental Defendants—Sovereign Immunity

### 1. Unjust Enrichment (Count III), Economic Compulsion (Count IV), and Constructive Fraud (Count V)

{9} The district court held that claims against the State, Robert Perry, the City of Espanola, and Rio Arriba County for unjust enrichment (Count III), economic compulsion (Count IV), and constructive fraud (Count V) were barred by the New Mexico Tort Claims Act, NMSA 1978, §§ 41–4–1 to –27 (1976, as amended through 2001) (hereinafter TCA). Under the TCA, government entities are immune from tort liability unless immunity is specifically waived by the Act. NMSA 1978, § 41–4–4(A) (2001); Redding v. City of Truth or Consequences, 102 N.M. 226, 227, 693 P.2d 594, 595 (Ct.App. 1984). "Economic compulsion cases lend themselves most readily to the tort analytical framework (duty, breach of duty, causation and damages.)" Terrel v. Duke City Lumber Co., 86 N.M. 405, 422, 524 P.2d 1021, 1038 (Ct.App.1974). Because economic compulsion cases lend themselves to a tort analysis, governmental entities may only be sued under this cause of action if immunity is waived by the TCA. As for constructive fraud cases, the Court of Appeals has held that constructive fraud is an activity for which "sovereign immunity must be abrogated by one of the provisions of the Tort Claims Act." Health Plus Inc. v. Harrell, 1998–NMCA–064, ¶ 17, 125 N.M. 189, 958 P.2d 1239. The TCA does not specifically waive liability for economic compulsion or constructive fraud. See NMSA 1978, § 41–4–13 to –25 (1976, as amended through 2001). Because Plaintiffs' economic compulsion and constructive fraud claims have not specifically been waived by the TCA, the government cannot be sued for these causes of actions. Therefore, these claims were properly dismissed by the district court.

{10} Plaintiffs' unjust enrichment (Count III) claim is more appropriately dismissed under NMSA 1978, § 37–1–23 (1976) (granting governmental entities immunity for actions based on contract, except for actions based on a valid written contract). The district court held that under Hydro Conduit Corp. v. Kemble, 110 N.M. 173, 179, 793 P.2d 855, 861 (1990), claims against governmental Defendants for unjust enrichment were barred by contractual immunity. In Hydro, we determined that a claim for unjust enrichment is an action closely related to an action based in contract for purposes of Section 37–1–23 and that Section 37–1–23 should be construed to extend governmental immunity to unjust enrichment claims. Id. Because Hydro specifically extends governmental immunity to unjust enrichment claims, the state and county Defendants in the present matter cannot be sued for unjust enrichment. Therefore, Plaintiffs' unjust enrichment claim

was appropriately dismissed by the district court.

### 2. Violation of Separation of Powers by Unlawful Taxation (Count VII), Unlawful Special Tax (Count VIII), and Unlawful Taking (Count IX)

{11} State, county, and city Defendants argued that Plaintiffs' separation of powers by unlawful taxation (Count VII), unlawful special tax (Count VIII), and unlawful taking (Count IX) claims failed to state a valid claim and were barred under the TCA.[2] In granting governmental Defendants' motions to dismiss, the district court concluded that Plaintiffs failed to state a claim because the facts alleged did not show that a tax had been imposed. We have previously stated that "[a] rate charged for a public utility service or product is not a tax, but a price at which and for which the public utility service or product is sold[.]" *Apodaca v. Wilson*, 86 N.M. 516, 525, 525 P.2d 876, 885 (1974) (quoted material and citations omitted). In the present matter, Plaintiffs voluntarily accepted collect call services. We do not consider payment for these voluntary services to be a mandatory tax. Because there is no tax involved in the present matter, Plaintiffs' claims for separation of powers by unlawful taxation and unlawful special tax fail to state a claim and were appropriately dismissed by the district court.

{12} In Counts VII and VIII, Plaintiffs also argued that the rates charged by the private companies were taxes and such taxation violated the New Mexico Constitution. Even if this had been so, it is well established that "absent a waiver of immunity under the Tort Claims Act, a person may not sue the state for damages for violation of a state constitutional right." *Ford v. Dep't of Pub. Safety*, 119 N.M. 405, 412, 891 P.2d 546, 553 (Ct.App.1994). As discussed earlier, in order for a plaintiff to sue a governmental entity, the cause of action must fit within one of the exceptions under the TCA. *See* § 41–4–4(A); *Redding*, 102 N.M. at 227, 693 P.2d at 595. There is nothing in the TCA waiving government immunity for Plaintiff's separation of powers for unlawful taxation and unlawful special tax claims. *See* §§ 41–4–13 to –25. Because the TCA has not waived immunity for Defendants' conduct, we agree with the district court that Counts VII and VIII were properly dismissed.

### III. Conclusion

{13} This Court has reviewed the record and concludes that the district court properly dismissed Plaintiffs' claims for damages under the filed rate doctrine, primary jurisdiction doctrine, and sovereign immunity. Plaintiffs' claims for injunctive relief are moot due to recent legislation passed by the legislature.

{14} IT IS SO ORDERED.

WE CONCUR: PATRICIO M. SERNA, Chief Justice, PETRA JIMENEZ MAES, Justice, and PAMELA B. MINZNER, Justice (recused).

---

**2.** Although the docketing statement contained argument regarding Plaintiff's unlawful taking claim (Count IX), Plaintiff's Brief in Chief did not address this issue. Because Plaintiff's Brief in Chief did not address the issue, we consider Count IX abandoned. *Silverman v. Progressive Broad., Inc.*, 1998–NMCA–107, ¶ 41, 125 N.M. 500, 964 P.2d 61.