SUTIN, Judge (dissenting). {34} I respectfully dissent. {35} In the post-judgment hearing apparently related to the Ewert Board’s motion to vacate the court’s judgments (the post-judgment hearing), the court addressed questions in regard to whether the Ewert Board members could be held individually liable for the Fletcher Board’s attorney fees in the declaratory judgment action. The Ewert Board members contended that the Ewert Board members were not parties to the declaratory judgment action since they were neither named plaintiffs nor personally served with any claim seeking to hold them individually responsible for the Fletcher Board’s attorney fees. The Fletcher Board contended that the Ewert Board members were individually responsible principally because they initiated the declaratory judgment action and because they were individually set out in an averment of the complaint. {36} At the outset of the post-judgment hearing, a question arose as to who attorney Martin E. Threet represented. Mr. Threet stated, “I represent the former [Ewert] board as a whole through their representative named as the plaintiff in the matter.” When opposing counsel indicated that one of the paragraphs in the motion to set aside the judgments applied just to the individual Ewert Board members, indicating that the movants were separate from the Association, the district court stated, “As far as I’m concerned he represents the prior board and every individual of it.” Mr. Threet then responded, “That is correct, Your Honor.” {37} The discussion of representation continued between the court and attorney Michael D. Stell in regard to assessing individual liability for attorney fees against the Ewert Board members, that is, “individuals[] who in their minds were simply honoring the charge that they had been given to represent the interest of the [Association and its membershipf] through litigation of this case and until the issues were addressed.” [Mr. Stell:] The individuals themselves had never been named as parties in this lawsuit. They [have] never been served, and they never [have] appeared. And for that reason[,] this court does not have jurisdiction over the individuals. [Thecourt]: Soyoudon’tthink they had an attorney that identified himself as representing the board of directors and each individual member which was ratified again this morning, every time I’ve asked that it’s been the same response? You don’t think that’s incongruous? What do the [R]ules of [C]ivil [Procedure say, if I’ve got a lawyer[,] I’ve got to go out and serve the individuals? No. There’s not a [R]ule of [C]ivil [Procedure, there’s not a case in New Mexico that requires that. I send the stuff to the lawyer. [Mr. Stell]: But the lawyer was representing the entity. [The court]: No, he wasn’t, he was representing the entity and each individual member of it. [Mr. Stell]: I suppose that’s kind of where we, perhaps, have different views because I think that Mr. Threet was representing the board as an entityf] and was not representing the individuals. [The court]: So when I asked if he’s representing each individual member, he said yes, he was wrong? There’s a disagreement with counsel at this table about what he was doing for a year and a half. [Mr. Stell]: Let me explain. When the case was first filed, it was filed on behalf of the entity, which the plaintiffs [sic] believed properly existed. And of course it was seeking the court’s ruling as to whether that was, in fact, the case. [The court]: And what happened in that case? [Mr. Stell]: Exactly. Over time — [The court]: What happened in that case? [Mr. Stell]: Over[]time the [c]ourt decided that, in fact, this was not the proper— [The court]: But before the court decided[,] what happened in the case? [The Fletcher Board] filed a responsive pleading and sought confirmation of the award. [The] pleadings were clearly directed at the board — I can’t remember the names, the prior board and all [its] individual members. [Mr. Stell]: Yes. [The court]: And so if I’ve got a lawyer, I mean — I’ve got real problems with this. If you’re representing these people individually and collectively and you never act otherwise, how is the court supposed to know? It was never raised. It sounds like a serious waiver problem to me. [Mr. Stell]: Well, I think as I say, Mr. Threet was representing the entity and while over time it became apparent there was some question about whether the entity existed, acknowledged he was representing them individually to the extent that they were involved in the matter. But, of course, . . . they themselves had never been . . . named individually, they’ve never been served, and they’ve never appealed it, individually. After stating, in line with a good faith requirement contained in the indemnification clause, that “[t]hese people were not attempting to litigate [the declaratory judgment action] out of any bad faith, ill will, [or] malicef.]” Mr. Stell also stated: They had nothing to gain from this and, . . . they had a price to pay. . . . And so we believe, in the end, whether they were ultimately right or not, they’re entitled to indemnification from the [Association for the attorney[] fees incurred in connection with that. And we think it would just produce sort of a circuitous exercise if attorney[] fees were assessed and then indemnification claimed to be back to the [A]ssociation. {38} Following the hearing, the district court entered an order in March 2009 in which the court noted that “Mr. Threet was paid by [Association] funds” and that “the fairest way to handle [the Fletcher Board’s counsel’s] attorney[] fees is for counsel to be paid by [the Association,]” and the court set aside its judgment that had apparently awarded attorney fees against the Ewert Board members individually. As noted by the majority Opinion, this order appears to have ended the declaratory judgment action. Majority Op. ¶ 8. {39} In my view, the foregoing exchange between counsel and the court represents the issue that is at the crux of this appeal. That is, at the heart of the res judicata issue is how to characterize Plaintiffs’ status in the two lawsuits. As members of the ousted board seeking reinstatement as the legitimate board, Plaintiffs were instrumental in filing the declaratory judgment action in the name of the Association “by its President, John Ewert.” It appears obvious that, to the district court involved in the declaratory judgment action as well as to the court that heard the action now before this Court, Plaintiffs were taking irreconcilable or conflicting positions as to party status. Specifically, they could not, be individually liable for the Fletcher Board’s attorney fees because they were not parties in the declaratory judgment action, or if they were parties, it was only in a representative capacity. And yet they essentially were parties that had to defend against the Fletcher Board’s pursuit against them personally in the declaratory judgment action. {40} It seems apparent that, in the courts’ eyes in both actions, the Ewert Board members were responsible for initiating the declaratory judgment action and were represented individually and as a board by Mr. Threet, who agreed that he was representing “the prior board and every individual of it.” According to Mr. Stell, Mr. Threet “represented] the board as an entity,” and he was paid out of Association funds. When the question of payment of the Fletcher Board’s attorney fees was at issue in the declaratory judgment action, instead of pinning the fees on the Ewert Board members individually, the court determined that a fair handling of the issue was to require the Association to pay those fees. Thus, at the close of the declaratory judgment action, the Ewert Board’s attorney fees (incurred through June 200 8), as well as the Fletcher B oard’s attorney fees, incurred in litigating the merits of the declaratory judgment action, were paid by the Association. At the close of the declaratory judgment action, however, nothing had specifically been raised in regard to fees that the Ewert Board’s individual members had incurred to defend against the Fletcher Board’s pursuit of payment of its attorney fees against the Ewert Board members individually. And therein lay the problem. {41} The apparent positioning of the Ewert Board members individually in the declaratory judgment action and Plaintiffs, here, seems to have caused the courts in the two lawsuits to essentially turn a deaf ear to their positions and arguments. Under a common sense view of parties, no spin could separate the Ewert Board members and the Fletcher Board members from their personal involvements and statuses in the two lawsuits, including their apparent personal obligations to their attorneys for fees in the prosecution and defense of the various claims in the declaratory judgment action. On appeal, this Court should not reward the Ewert Board members and their counsel for essentially turning the question of their party-status in the declaratory judgment proceedings into a moving target. {42} I do not agree with the Majority’s statement that “[i]t is not entirely clear whether the parties and the district court focused on the claim preclusion aspect or the issue preclusion principle of res judicata.” Majority Op. ¶ 18. In the proceedings below, it is clear that the parties and the court focused on res judicata/claim preclusion, and it is also clear that on appeal the Ewert Board members limit their argument to res judicata/claim preclusion. I would strictly adhere to the arguments made by the Ewert Board members on appeal, and I would affirm the district court’s dismissal on res judicata/claim preclusion grounds. My analysis of the Ewert Board’s (Plaintiffs’) res judicata/claim preclusion argument follows. Consideration of Matters Beyond the Complaint {43} As an initial matter, I respectfully disagree with the Majority that the district court’s consideration of matters outside the pleadings converted the motion to dismiss in this case into a motion for summary judgment. Majority Op. ¶ 1. The district court dismissed the complaint under Rule 1-012(B)(6) and did not treat the motion as one seeking summary judgment. The Association did not seek summary judgment in the district court, and the Association does not argue on appeal that Plaintiffs’ motion to dismiss was transformed into a summary judgment proceeding or that the court’s order of dismissal was an order granting summary judgment. {44} Plaintiffs argue that because the complaint alleged that they were not parties in the declaratory judgment action, the court’s finding that the first element of res judicata/claim preclusion was met could not have been based “upon the face of the complaint}.]” See Valdez v. State, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71 (stating the principle that, in reviewing Rule 1 - 012(B)(6) motions to dismiss, all well-pleaded factual allegations in a complaint are accepted as true). In Plaintiffs’ view, res judicata could only apply at the Rule 1-012(B)(6) stage if they had stated in their complaint that they were parties in the declaratory judgment action. {45} Plaintiffs’ argument and presumably the Majority’s view that the motion to dismiss was converted to a motion for summary judgment results from the district court’s consideration of the record from the declaratory judgment action. In its order on Plaintiffs’ motion for reconsideration, the district court indicated that its res judicata determination was based on a “review of the [declaratory judgment action] from which this case stem[med.]” Plaintiffs argue that the court’s consideration of the record from the earlier case erroneously went beyond the pleadings and erroneously and prejudicially transformed the proceeding into a summary judgment proceeding without notice to Plaintiffs and with no opportunity for them to defend against such a proceeding. In making this argument, Plaintiffs appear to rely on Rule 1-012(C) for the proposition that nothing beyond the bare text of their complaint may be considered without converting a motion to dismiss to a summary judgment motion. See id. (stating that “on a motion for judgment on the pleadings, [if] matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment”). I would reject Plaintiffs’ arguments. {46} In oral argument before the district court on Plaintiffs’ motion to reconsider, Plaintiffs’ counsel acknowledged that “in a [Rule 1-0] 12(B)(6) situation” courts “are entitled to look beyond the pleadings to documents integral to the pleadings[.]” This principle, though not fully vetted in New Mexico case law, is a staple in the federal system where it appears to be considered widely acceptable for courts faced with a motion to dismiss to consider matters of public record when such matters are referenced in the plaintiff’s pleadings. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (explaining that when faced with a Rule 12(b)(6) motion to dismiss,- “courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice”); Navajo Nation v. Urban Outfitters, Inc., 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (recognizing that no conversion from a motion to dismiss to a motion for summary judgment is required when a “court takes judicial notice of its own files and records and facts that are [a] matter of public record”); Katz v. McVeigh, 931 F. Supp. 2d 311, 320 (D.N.H. 2013) (“A court ruling on a motion to dismiss under Rule 12(b)(6) may consider not only the complaint but also facts extractable from documentation annexed to or incorporated by reference in the complaint and matters susceptible to judicial notice[,] . . . including] matters of public record, such as documents from prior state court adjudications.” (internal quotation marks and citations omitted)). Plaintiffs’ complaint was replete with references to the declaratory judgment action. That litigation was a matter of public record, and it was available to the court by virtue of its own record of the proceedings. See Lopez v. LeMaster, 2003-NMSC-003, ¶ 32, 133 N.M. 59, 61 P.3d 185 (permitting the district court to take judicial notice of its own records). Under these circumstances, I do not believe that it was error, in the context of the Rule 1-012(B)(6) motion to dismiss, for the court to consider the record of the declaratory judgment action. {47} Thus, notwithstanding the fact that the face of Plaintiffs’ complaint did not state that the parties to the present lawsuit and the declaratory judgment action were the same, it was not error for the district court to reach that conclusion by considering the record from the declaratory judgment action. Nor did the court’s consideration of its own record of the declaratory judgment action, which was referenced in Plaintiffs’ complaint, transform the motion to dismiss into one for summary judgment. Same Parties {48} Plaintiffs argue that the Association — a jural entity in its own right — not the Ewert Board or its individual members, was the plaintiff in the declaratory judgment action. Plaintiffs point to the fact that the Association is a non-profit corporation, managed by a board of directors, and, like other corporations, it may sue and be sued in its own name. Plaintiffs argue that “[i]n a real sense, [the Association] is a legal entity separate and apart from its members and directors.” {49} Relying on the distinction between a board of directors acting on behalf of an incorporated association and the individual members of the board, Plaintiffs argue that they were not parties to the declaratory judgment action. As such, they argue that the cases of Slide-A-Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces, 1987-NMSC-018, 105 N.M. 433, 733 P.2d 1316, and Kirby v. TAD Resources International, Inc. (Kirby I), 2004-NMCA-095, 136 N.M. 148, 95 P.3d 1063, support their conclusion that the first element of res judicata/claim preclusion — requiring the parties to be the same — is not present under these circumstances. Because the facts of Slide-A-Ride and Kirby I bear no resemblance to the facts of this case and because Plaintiffs rely on them for legal propositions rather than factual similarities, I will not engage in a lengthy recitation of their facts. {50} Plaintiffs rely on Slide-A-Ride for the proposition that just as a corporation is a legal entity distinct from its shareholders, so too is the board of an association distinct from its individual members. See 1987-NMSC-018, ¶¶ 22-24 (concluding that a corporation and its shareholders were not the same party for res judicata purposes). Plaintiffs rely on Kirby I for the proposition that res judicata/claim preclusion does not bar the present lawsuit because “[t]o the extent that [they] were even mentioned in the original declaratory judgment suit, it was only in their representative capacity as board members of [the Association]” and not in their individual capacities. See 2004-NMCA-095, ¶¶ 1, 26, 28-29 (holding that res judicata did not bar the plaintiffs claim against her employee benefits plan, even though payments would be administered by an insurance company that had been dismissed from an earlier suit on res judicata grounds, because there existed an attempt to distinguish between the insurer in its capacity as a corporate entity versus its capacity as a fiduciary or representative responsible for administering the plan). {51} Neither Slide-A-Ride nor Kirby I support Plaintiffs’ position. I recognize that, generally, the individual members of a board are legally distinct from the entity that they represent. See, e.g., NMSA 1978, § 53-8-17 (1975) (“The affairs of a corporation shall be managed by a board of directors.”); NMSA 1978, § 53-8-25 (1975) (“The directors, officers, employees],] and members of the corporation shall not be personally liable for the corporation’s obligations.”); cf. Wirtz v. State Educ. Ret. Bd., 1996-NMCA-085, ¶¶ 4, 7, 122 N.M. 292, 923 P.2d 1177 (holding that the plaintiffs petition for a writ of certiorari to the district court naming the board as the respondent did not render the individual members of the board parties to the action); Lava Shadows, Ltd. v. Johnson, 1996-NMCA-043, ¶ 7, 121 N.M. 575, 915 P.2d 331 (“The fact that the partnership is a party does not in itself make the partners parties.”). Nevertheless, under the facts of this case, as indicated in Plaintiffs’ complaint, and as found by the district court in the declaratory judgment action, Plaintiffs’ attempted distinction between the Association and the individual members of the Ewert Board does not overcome the first element of res judicata/claim preclusion. {52} According to the Restatement, supra, § 39, “[a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.” This notion of control over prior litigation as a factor in determining party status for res judicata/claim preclusion purposes was recognized in Slide-A-Ride, 1987-NMSC-018, ¶ 23, where the Court reasoned that res judicata did not apply because, among other reasons, “[tjhere was substantial evidence to negate any claim that the corporation controlled the litigation in the first lawsuit or that the individual [shareholders] controlled the litigation in [the Slide-A-Ride] suit.” The underlying rationale for taking into consideration one’s control over litigation to which he or she was not a named party is that [a] person who assumes control of litigation on behalf [of] another has the opportunity to present proofs and argument on the issues litigated. Given this opportunity, he has had his day in court and should be concluded by the result. Such an assumption of control is often motivated by a direct interest the controlling party has in the litigation because its outcome will affect his rights or obligations to the person on behalf of whom he participates or against whom the litigation is conducted. . . . The fact of his assumption of control of the litigation is itself indicative that his interest is substantially equivalent to that of the party on whose behalf he appears. Restatement, supra, § 39 cmt. a. In my view, the circumstances of this case call for an application of the foregoing principle. {53} My view comports with that of the district court. The Ewert Board members (four of whom are Plaintiffs in the present case) controlled the declaratory judgment action. Plaintiffs’ assumption of control of that litigation was motivated by their “direct interest” in the outcome because it would determine their right, as the Ewert Board, to act on behalf of the Association. See id. (stating that “an assumption of control is often motivated by a direct interest the controlling party has in the litigation because its outcome will affect his rights or obligations to the person on behalf of whom he participates or against whom the litigation is conducted”). Having been ousted by the Fletcher Board, Plaintiffs retained counsel and presumably underwrote the declaratory judgment action in an effort to vindicate what they believed to be their rightful status as the “duly established, properly existing, and legally constituted [bjoard of [djirectors of [the Association.]” To that end, I note that, among other things, Plaintiffs’ complaint in the present case states the following. Because there were understandably under the circumstances significant questions concerning the legitimacy of the [Fletcher] Board, the [Ewert] Board decided that the proper course of action would be to submit the matter to an independent court of law for a fair and just adjudication. Consequently, to address and resolve the matter, the [Ewert] Board filed . . . a declaratory judgment action[.] . . . The [declaratory judgment action] sought a judicial determination as to which of the two boards was in fact the duly established, properly existing, and legally constituted [b]oard of [directors of [the Association] and thereby vested with the rights, powers, obligations, and responsibilities associated therewith. {54} In bringing the declaratory judgment action, although they purported to act on behalf of the Association and although they named the Association as the plaintiff in that action, the Ewert Board members were acting in their own interests to question the validity of the divestiture of their position and power, and their attack engine was fueled by hiring legal counsel and controlling the legal action. Viewed in this manner, it is clear that in bringing the declaratory judgment action, the only interests that the Ewert Board members sought to vindicate or protect were their own interests in regaining their status as the “legitimate board” with the power to act on behalf of the Association. That the litigation was brought in the Association’s name does not change the implicit if not obvious fact that the declaratory judgment action was brought by and for the benefit of the individual Ewert Board members. See id. (explaining that the “assumption of control of the litigation is itself indicative that [one’s] interest is substantially equivalent to that of the party on whose behalf he appears”). {55} The indistinguishability of interests of the Ewert Board members and the Association on whose behalf they purportedly appeared in the declaratory judgment action was noted by the district court in that action. For example, in the post-judgment hearing the district court explained to the Ewert Board’s counsel that after the Fletcher Board was elected, “[e]very action [the Ewert Board] took . . . they did as individuals},]” including filing the declaratory judgment action. Additionally, as I indicated earlier, the district court in the declaratory judgment action viewed the Ewert Board’s counsel as “representing the entity and each individual member of it”; that is, he was representing the Association and to the same extent he was representing the individual members of the Ewert Board. From the foregoing, the court reasonably viewed the individual members of the ousted Ewert Board to be in control of the litigation — a view that is fully supported by their counsel’s agreement in the declaratory judgment action that he “represented] the prior board and every individual of it.” {56} By virtue of their control over the declaratory judgment action, the Ewert Board members had “the opportunity to present proofs and argument on the issues litigated.” Id. In fact, beyond a mere “opportunity” to weigh in on the indemnification issue, the record reflects that the indemnification issue was brought into the declaratory judgment action by the Ewert Board members’ counsel, Mr. Stell, the same counsel who is involved in their representation in the current lawsuit. At the post-judgment hearing, in regard to the Fletcher Board’s claim for attorney fees, Mr. Stell argued, on behalf of the individual Ewert Board members, that “each of the[] individuals as a . . . present or past board member, would ultimately be entitled under the by[-]laws to indemnification for being involved in a lawsuit arising from conduct [in which] they engaged in good faith.” Having thus raised the issue of the individual Ewert Board members’ indemnification right in relation to the Fletcher Board’s claim, I see no rational basis for Mr. Stell to have refrained from pursuing the issue further on behalf of the individual Ewert Board members during that hearing in regard to indemnification for their own fees incurred in defending against the Fletcher Board’s claim. Having had and having foregone the opportunity to argue indemnification in that regard, Plaintiffs had their day in court and their claim should be precluded based on res judicata/claim preclusion by the result. See id. {57} Based on their control of and interest in the declaratory judgment action, Plaintiffs are as much bound by the prior adjudication as if they had been named parties. See Montana v. United States, 440 U.S. 147, 154 (1979) (“[T]he persons for whose benefit and at whose direction a cairse of action is litigated cannot be said to be strangers to the cause.... One who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record.” (omissions in original) (alteration, internal quotation marks, and citation omitted)). Under these circumstances, I believe that the same-parties element of res judicata/claim preclusion was met. Plaintiffs’ argument to the contrary provides no basis for reversal. Ripeness of the Indemnification Claim {58} Plaintiffs also claim that res judicata/claim preclusion does not apply because their indemnification claim was not ripe for review until the declaratory judgment action had been resolved. Plaintiffs’ ripeness claim rests upon their argument that, having been billed by their attorney two months after the declaratory judgment action ended, they did not know at the time the litigation ended how much they owed to their attorneys and, therefore, they could not have asserted a claim for that debt in that litigation. {59} “Generally, the purpose ofripeness is to conserve judicial machinery for problems which are real and present or imminent, not to squander it on abstract or hypothetical or remote problems.” ACLU v. City of Albuquerque, 2007-NMCA-092, ¶ 7, 142 N.M. 259, 164 P.3d 958 (internal quotation marks and citation omitted), aff’d, 2008-NMSC-045, 144 N.M. 471, 188 P.3d 1222. “The ripeness doctrine exists to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.” City of Sunland Park v. Macias, 2003-NMCA-098, ¶ 23, 134 N.M. 216, 75 P.3d 816 (internal quotation marks and citation omitted). “[A]n issue may be ripe where the threat of harm [is] sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage.” Id. (internal quotation marks and citation omitted). {60} Plaintiffs rely on Casanova v. Marathon Corp., 256 F.R.D. 11, 14 (D.D.C. 2009), for the proposition stated in that case that “there appears to be a general rule that an indemnitor cannot- be sued until the indemnitee is first held liable.” (Internal quotation marks and citation omitted.) Further, Plaintiffs rely on Invensys Inc. v. American Manufacturing Corp., No. Civ.A. 04-3744, 2005 WL 600297, at *3 (E.D. Pa. March 15, 2005), for the proposition stated in that case that “the mere expenditure of counsel fees does not constitute the accrual of a cause of action for indemnification.” (Internal quotation marks and citation omitted.) And Plaintiffs also rely on Smith International, Inc. v. The Egle Group, LLC, 490 F.3d 380 (5th Cir. 2007), and Bellevue v. Kafka, Nos. 92 C 4589, 92 C 6663, 1994 WL 127213 (N.D. Ill. April 7, 1994), to support their argument that “courts have repeatedly held that an indemnity claim for attorney[] fees is not barred by res judicata when the indemnity claim is asserted in a different lawsuit from the suit where the fees are incurred.” {61} Neither Casanova nor any other case cited by Plaintiffs supports their ripeness claim. Plaintiffs’ reliance on the general rule stated in Casanova is misplaced. As explained by the Casanova court, the application of the principle that an indemnification claim is not ripe until the indemnitee is held liable is appropriate where the claim for indemnification is contingent upon future events, that is, the adjudication of the indemnitee’s liability to a third party. 256 F.R.D. at 13-14. A related principle, applied in Invensys Inc., is that “an indemnitee may recover attorney[] fees and costs incurred during the underlying litigation along with the actual judgment from the indemnitor.” 2005 WL 600297, at *3-5 (alteration, internal quotation marks, and citation omitted) (dismissing, as premature, an indemnitee’s claim for attorney fees associated with the ongoing litigation, the liability for which would be the subject of a later indemnification claim). Similarly, in Smith International and Bellevue, in another iteration of the same principle, the courts noted that until an underlying suit is resolved and financial liability settled, a claim for indemnification is premature. See Smith Int'l, 490 F.3d at 389 (explaining that the plaintiffs “cause of action [for indemnity] did not accrue until . . . after the . . . court entered its judgment against [it]”); Bellevue, 1994 WL 127213, at *2 (explaining that where a partnership agreement provided that the prevailing party would be entitled to recover attorney fees, the claim for attorney fees was premature until the original suit was adjudicated and the prevailing party was named). {62} In this case, unlike Casanova and cases similar to it,. Plaintiffs’ request for attorney fees was not contingent upon the resolution of an unresolved lawsuit pursuant to which judgments were entered against Plaintiffs or where Plaintiffs might be entitled to reimbursement from a third-party indemnitor. The lawsuit that gave rise to Plaintiffs’ attorney fees, the declaratory judgment action, did not end in a judgment against Plaintiffs for which Plaintiffs could seek to be reimbursed by the Association under its indemnification clause. Thus, I am not persuaded by Plaintiffs’ argument that because they had yet to receive a final bill from their attorney, their claim for indemnification was premature or not yet ripe. {63} The subject of the post-judgment hearing was the Fletcher Board’s claim against the individual Ewert Board members for attorney fees. The court ruled that the fair approach was to require the Fletcher Board’s attorney fees to be reimbursed by the Association since the Association had paid the Ewert Board’s attorney fees until the arbitration determined which board was properly seated. I see no reason why the EwertBoard members, individually, could not have also pursued indemnification of their own attorney fees during this hearing. As indicated by the district court in its order on motion for reconsideration, in this case, the court in the declaratory judgment action had “specifically addressed the issue of indemnification,” and “[t]he opportunity existed for the parties to further address the issue of indemnification, but they acted at their own peril in acting otherwise.” The Two Causes of Action {64} In their fifth subpoint, Plaintiffs argue that because the present lawsuit does not involve “the same cause of action” as the declaratory judgment action, their complaint is not barred by res judicata/claim preclusion. See Kirby II, 2010-NMSC-014, ¶ 61 (stating that the second element of res judicata is that “the cause of action must be the same” (internal quotation marks and citation omitted)). Specifically, Plaintiffs argue that the claims at issue in the two lawsuits differ because “[tjhere was no claim by Plaintiffs for indemnity of their own individual attorney[] fees in the prior declaratory judgment suit.” {65} In determining whether a lawsuit addresses the same “cause of action” as an earlier lawsuit, we consider whether “the claim extinguished by a first judgment includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.” Anaya, 1996-NMCA-092, ¶ 7 (alteration, internal quotation marks, and citation omitted). The “concept of a transaction . . . connotes a natural grouping or common nucleus of operative facts[,]” and it involves considerations such as “whether the facts are related in time, space, origin, or motivation, [and] whether they form a convenient trial unit[.]” Id. ¶¶ 7-8 (internal quotation marks and citations omitted). {66} Plaintiffs’ claim for attorney fees in this case originated from their involvement in the declaratory judgment action. The scope of the Association’s indemnification clause coverage was at issue in the February 2009 hearing; and the provision i'tselfwas presented as evidence at that hearing. Because Plaintiffs’ individual liability for the Fletcher Board’s attorney fees was also at issue in that hearing, I see no rational basis, nor do Plaintiffs provide one, on which to conclude that Plaintiffs’ claim for attorney fees can be said to have risen from a different “transaction” than the legal dispute between the Fletcher and the Ewert Boards that underlay the issues raised in the declaratory judgment action. Under the circumstances of this case, the district court properly determined that the second element of res judicata/claim- preclusion was met. The third and fourth elements of res judicata/claim preclusion are not at issue in this appeal. See, e.g., Kirby II, 2010-NMSC-014, ¶ 61 (setting out the four required elements of res judicata). Whether the District Court Erred in Denying Plaintiffs’ Motion for Leave to Amend Their Complaint {67} Plaintiffs argue, in the alternative, that “at a minimum” the district court should have permitted them to amend their complaint. The denial of a motion to amend is reviewed for an abuse of discretion. See Stinson v. Berry, 1997-NMCA-076, ¶ 9, 123 N.M. 482, 943 P.2d 129. {68} Because I would hold that Plaintiffs-’ claim for attorney fees is barred by res judicata/claim preclusion, I would conclude that an amendment to the complaint would be futile. Cf. id. ¶ 11 (holding that where the plaintiffs’ “amended complaint could not withstand a motion to dismiss, the amendment would have been futile”). Owing to the futility of permitting the amendment, the district court cannot be said to have abused its discretion by denying Plaintiffs’ motion for leave to amend the complaint. See id. Accordingly, I would determine that this issue presents no basis for reversal. {69} For the foregoing reasons, I would affirm the district court’s order. JONATHAN B. SUTIN, Judge