# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>July 6, 2015</u>

**NO. 32,648**

**VILLAGE OF LOGAN,**

      Plaintiff-Appellant,

v.

**EASTERN NEW MEXICO WATER
UTILITY AUTHORITY**,

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Sarah M. Singleton, District Judge**

Hinkle, Hensley, Shanor
& Martin, L.L.P.
Thomas M. Hnasko
Dulcinea Z. Hanuschak
Dayan M. Hochman
Santa Fe, NM

for Appellant

Montgomery & Andrews, P.A.
Louis W. Rose
Jeffrey J. Wechsler
Carolyn A. Wolf
Galen M. Buller
Santa Fe, NM

Grieg & Richards, P.A.
David F. Richards
Clovis, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}     This single-issue appeal requires clarification of the legal methodology that applies to resolve a zoning and land use conflict between a municipality and a water utility authority, both of which are political subdivisions of the state established by legislative processes. The district court employed the statutory guidance test, which it found to be most consistent with New Mexico law. We affirm.

**BACKGROUND**

{2}     Plaintiff-Appellant, the Village of Logan (the Village), is located within Quay County, near Tucumcari and on the shores of the Ute Lake Reservoir. As a New Mexico municipality, the Village has the authority to adopt and enforce laws and zoning regulations "[f]or the purpose of promoting health, safety, morals or the general welfare" of its residents. NMSA 1978, § 3-21-1(A) (2007). When the Village first enacted its zoning ordinances in 1965, it created six zones, one of which was designated "R-1," denoting single-family residential use unless otherwise specified. Under the Village's current ordinances, any landowner wishing to utilize property in a manner contrary to its zoning designation must apply to the Village for a special use permit.

{3}     Defendant-Appellee, Eastern New Mexico Water Utility Authority

(ENMWUA), is a state entity created by the Legislature pursuant to NMSA 1978, Section 73-27-4 (2010). The Eastern New Mexico Water Utility Authority Act (the Act), *see* NMSA 1978, §§ 73-27-1 to -19 (2010), was enacted to create a "water utility authority to develop and construct a water delivery system [to] local governments within the boundaries of the authority." Section 73-27-2(B)(1), (2). Within the Act, the Legislature posited the need for an "organized structure to work with state, local and federal agencies to complete a water delivery system from the Ute Reservoir to local governments" in the neighboring eastern New Mexico counties of Curry and Roosevelt. Section 73-27-2(A)(3); § 73-27-4. To facilitate its mission, ENMWUA was granted the power of eminent domain to acquire property for "rights of way and easements and for the use and placement of facilities and infrastructure elements, including pipelines, structures, pump stations and related appurtenances." Section 73-27-7(G).

{4} Once established, ENMWUA acquired Lot 11 in the Village's South Shore development. It sought and obtained a special use permit for an initially planned water intake structure that would be contained within the boundaries of Lot 11. ENMWUA later decided to enlarge the planned structure, and to include an access road and holding pond. To accommodate the larger facilities, ENMWUA used its power of eminent domain to acquire Lot 12, adjacent to Lot 11. The Village asserted

that without a newly specific special use permit, the project would violate the Village's R-1 zoning regulations on Lot 12. At that juncture, ENMWUA ceased to acknowledge the Village's authority to enforce its zoning regulations against it and refused to again seek a special use permit.

{5}     The impasse led the Village to district court, where its complaint sought injunctive relief and a declaratory determination that its zoning regulations were indeed applicable to ENMWUA, such that a special use permit would be required in order for the proposed construction to proceed. ENMWUA filed a motion to dismiss pursuant to Rule 1-012(B)(6) NMRA, arguing that as a state agency it was immune from the Village's zoning laws. In support, ENMWUA cited *City of Santa Fe v. Armijo*, 1981-NMSC-102, ¶ 3, 96 N.M. 663, 634 P.2d 685 ("Municipalities have only those powers expressly delegated by state statute."). Concluding, however, that the parties were political subdivisions of equal dignity insofar as each had been "created by or pursuant to statute," the district court found that *Armijo* "does not control the situation presented in this case," and sought legal guidance elsewhere.

{6}     The district court and the parties collectively identified five stand-alone tests used in varying jurisdictions to resolve disputes of this nature: (1) the statutory guidance test, (2) the balancing of interests test, (3) the eminent domain test, (4) the superior sovereign test, and (5) the governmental propriety test. *See Macon Ass'n for*

3

*Retarded Citizens v. Macon-Bibb Cnty. Planning & Zoning Comm'n*, 314 S.E.2d 218, 222 (Ga. 1984) (discussing and citing authority for each test); *Rutgers v. Piluso,* 286 A.2d 697, 702-03 (N.J. 1972) (discussing and applying the balancing of interests test). ENMWUA sought application of either the statutory guidance or eminent domain tests, while the Village maintained that the balancing of interests test should be adopted in circumstances of sovereign equality. Having distinguished *Armijo*, the district court nonetheless agreed with ENMWUA that the statutory guidance test was most consistent with New Mexico law, granted ENMWUA's motion, and dismissed the Village's complaint.

{7} The Village appeals, arguing that the district court erred in resolving the case by application of the statutory guidance test. The Village contends that we should adopt the balancing of interests test as the more equitable approach to resolving zoning and land use conflicts between equally situated political subdivisions of the state. The Village seeks remand in order for an evidentiary hearing to be conducted so that the interests of the two entities can be balanced in district court, which it asserts would produce a more informed result. ENMWUA maintains on appeal that the statutory guidance test is the proper test to be applied, and that its adoption in this circumstance would be most consistent with our Supreme Court's rejection of unexpressed municipal power in *Armijo*.

4

## STANDARD OF REVIEW

{8} "A district court's decision to dismiss a case for failure to state a claim under Rule 1-012(B)(6) is reviewed de novo." *Valdez v. State*, 2002-NMSC-028, ¶ 4, 132 N.M. 667, 54 P.3d 71. We accept as truthful well-pleaded factual allegations and resolve all doubts in favor of the complainant. *Id*. "A Rule [1-0]12(B)(6) motion is only proper when it appears that [a] plaintiff can neither recover nor obtain relief under any state of facts provable under the claim." *Valdez,* 2002-NMSC-028, ¶ 4 (emphasis, internal quotation marks, and citation omitted). The facts in this case are not in dispute; thus, we review only the district court's application of the statutory guidance test de novo.

## DISCUSSION

{9} Although this Court squarely addressed zoning and land use conflicts between the State and a lesser authority in *County of Santa Fe v. Milagro Wireless, LLC*, 2001-NMCA-070, 130 N.M. 771, 32 P.3d 214, as had our Supreme Court previously in *Armijo*, 1981-NMSC-102, neither has had occasion to speak regarding whether a wholly separate analysis is needed to resolve zoning and land use disputes between co-equal political subdivisions of the state concerning activities on non-state-owned land. Regarding this distinction, the Village contends that *Armijo* and *Milagro*, are not useful to this issue of "first impression," and that the statutory guidance test

5

amounts to little more than an "obsolete approach that should be eschewed in favor of the more enlightened [b]alancing of [i]nterests [t]est." ENMWUA agrees on appeal with the district court's selection of the statutory guidance test, and the resulting dismissal of the Village's complaint.

{10} We take a moment to summarize the balancing of interests test advocated by the Village and first introduced in *Rutgers*. The test owes its genesis to the New Jersey Supreme Court's belief that "[legislative] intent, rarely specifically expressed, is to be divined from a consideration of many factors[.]" *Rutgers,* 286 A.2d at 702. The summarized factors considered essential in *Rutgers* include statutory language itself, but also considerations such as the identification of alternative locations for land uses that divide one political subdivision from another, the scope of each litigant's political authority, input from any higher state authority, the degree to which the proposed facility is essential versus considerations of detriment to surrounding property, and whether any effort was made to comply with the disputed zoning procedures. *Id.* at 698. The Village also points out that the balancing of interests test has been embraced in New Mexico, albeit by the New Mexico Attorney General in an advisory opinion issued in 2005. *See* N.M. Att'y Gen. Op. 05-03 (2005) (relying on a *Rutgers* analysis to conclude that the Los Alamos Public School District is not automatically immune from local zoning regulations). The Village contends that this

6

modern, more "holistic alternative approach," best balances the interests of the parties and considers the overarching public interest in a comprehensive plan. *See Rutgers*, 286 A.2d at 701, 703; *Hayward v. Gaston,* 542 A.2d 760, 764 (Del. 1988); *Alaska R.R. Corp. v. Native Vill. of Eklutna,* 142 P.3d 1192, 1196 (Alaska 2006) (all adopting the balancing of the interests test).

{11}    We begin our analysis, however, by determining the degree to which *Armijo* and *Milagro*, are instructive. In *Armijo*, our Supreme Court announced specific limitations on the power of a municipality to enact and enforce local zoning regulations or restrictions. 1981-NMSC-102, ¶ 3. At issue was whether the City of Santa Fe could utilize its zoning authority to forbid the Commissioner of Public Lands from maintaining an oil field pumping rig on the premises of the State Land Office Building, an activity that would require a permit in order not to violate Santa Fe's historical district zoning ordinances. *Id.* ¶ 1. In reversing the district court's determination that Santa Fe's ordinances apply to state agencies, institutions, and officials, the Court held that "[a] state governmental body is not subject to local zoning regulations or restrictions." *Id.* ¶ 3. It added that "[s]tatutes granting power to cities are strictly construed, and any fair or reasonable doubt concerning the existence of an asserted power is resolved against the city." *Id*. The Court went on to state that "[m]unicipalities have only those powers expressly delegated by state statute" and

that such authority does not arise by "inference or implication from a statute." *Id*. The Court examined the language of state statutes regarding "Zoning Regulations" under NMSA 1953, §§ 14-28-9 to -11 (repealed in 1965) (current version at NMSA 1978, §§ 3-21-1 to -2 (1965, as amended through 2007)), then authorizing Santa Fe to zone property within its municipal boundaries in the first place. *Armijo,* ¶ 4. Finding no direct allowance within the statute permitting municipal zoning requirements to apply to state land, our Supreme Court reversed the district court's conclusion that Santa Fe could prevent placement of an oil pumping rig on state property. *Id.* ¶¶ 12-13.

{12}     *Milagro* assessed the enforceability of county zoning ordinances to the actions of a private, commercial entity on a state-owned right of way. 2001-NMCA-070, ¶¶ 2, 4-5, 7. Applying *Armijo* in this slightly different context, this Court upheld the district court's dismissal of a challenge to the erection of a cell phone tower—approved of but not undertaken directly by the New Mexico Highway Department—adjacent to I-25. *Milagro*, 2001-NMCA-070, ¶¶ 2, 9. From an analytic perspective, *Milagro*, as did *Armijo*, examined the statutory authority upon which the power to enforce county zoning ordinances was premised and concluded that the power granted lacked an "express grant of authority to zone on state land." *Milagro*, 2001-NMCA-070, ¶ 7.

{13}     Although notably distinct from this case insofar as both *Armijo* and *Milagro*, address activities that otherwise violated zoning restrictions on state owned land, both

8

utilized principles of statutory construction to determine that municipal ordinances lack force on state land when contrary authority is not plainly provided by enabling legislation. *Armijo*, 1981-NMSC-102, ¶¶ 12-13; *Milagro,* 2001-NMCA-070, ¶ 7. Here, the district court correctly identified the statutory guidance test as that most consistent with our jurisprudence. Pursuant to it, courts review the statutory powers assigned to each entity to ascertain whether the Legislature intended that one entity's local zoning ordinances apply to the other entity's activities. *Macon Ass'n*, 314 S.E.2d at 222; *see Village of Swansea v. Cnty. of St. Clair*, 359 N.E.2d 866, 867 (Ill. App. Ct. 1977) (utilizing statutory guidance test to conclude that to allow application of municipal zoning regulations to prevent construction of dog pound would frustrate the intent of the Illinois legislature and the statutory mandate of the animal control act it enacted); *State ex rel. St. Louis Union Trust Co. v. Ferriss*, 304 S.W.2d 896, 901-03 (Mo. 1957) (en banc) (applying statutory guidance test in holding school district's legally authorized construction activities to be superior to a municipality's zoning ordinance). We note also that the approach taken by *Armijo*, *Milagro*, and by jurisdictions that employ the statutory guidance test in instances such as this where political subdivisions conflict, is consistent with our historic preference to identify legislative intent when actions are undertaken pursuant to statutory authority. *See N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n,* 2007-NMSC-053,

¶ 20, 142 N.M. 533, 168 P.3d 105 ("When construing statutes, our guiding principle is to determine and give effect to legislative intent . . . aided by classic canons of statutory construction . . . giving the words their ordinary meaning, [absent indication that] a different one was intended."); *Griego v. Oliver*, 2014-NMSC-003, ¶ 20, 316 P.3d 865 ("Our principal goal in interpreting statutes is to give effect to the Legislature's intent."). We adopt the statutory guidance test as that which applies to determine whether a land use proposed by one political subdivision of the state may be prohibited by the zoning regulation of another. While we note the availability of additional possible tests to guide district courts in such instances, neither party seeks application of the tests not evaluated in this Opinion.

{14} We lastly turn to whether the statutory guidance test supports the district court's dismissal of the Village's complaint, and conclude that it does. We first note that the Village does not argue on appeal that if the statutory guidance test were correctly selected by the district court, it was nonetheless incorrectly applied. Accordingly, ENMWUA did not address application of the test in its answer brief. Yet the district court as well did not provide insight as to the basis on which it determined ENMWUA was entitled to dismissal of the Village's complaint pursuant to the statutory guidance test. We therefore elect to briefly explain why, as a matter of law and pursuant to the statutory guidance test, the district court's dismissal of the

Village's complaint was proper. The Act established, directed, and ultimately empowered ENMWUA in a manner greater than that allowed to municipalities such as the Village regarding land use regulation. Specifically, the Act identified the need for and created a water utility authority spanning multiple counties in eastern New Mexico. *See* §§ 73-27-1 to -4. It was designed to benefit local governments in that quadrant of the state by sharing water from the Canadian River stored in the Ute Reservoir. Section 73-27-2(A)(3). The power to condemn land by eminent domain is not an insignificant one[1], yet it was provided to ENMWUA to directly acquire and utilize property in Quay County, where the Village exists. *See* § 73-27-7(G). Ultimately, ENMWUA was directed to "provide an organized structure to work with state, local and federal agencies," Section 73-27-2(A)(3), not simply any local entity. *See* § 73-27-7(G).

{15} Comparatively, Section 3-21-1(A) allows local restriction of land use "[f]or the purpose of promoting health, safety, morals or the general welfare," among other local powers vested in municipalities such as the Village by the zoning authority. Yet,

---

[1]In jurisdictions that employ the eminent domain test, ENMWUA's power to take and use land would alone establish its superiority over the Village in the current dispute. *See Macon Ass'n,* 314 S.E.2d at 222 ("[T]he [p]ower of [e]minent [d]omain [t]est take[s] the position that when a political unit is authorized to condemn, it is automatically immune from local zoning regulation when it acts in furtherance of its designated public function."). For the purposes of statutory guidance, it is a factor that at minimum constitutes a significant expression of legislative intent.

11

no municipal ordinance can be "inconsistent with the laws of New Mexico." NMSA 1978, § 3-17-1 (1993). In this instance, the legislative purpose behind its creation of ENMWUA would be frustrated by requiring that it adhere to municipal zoning ordinances. We conclude that the statutory guidance test applies to immunize ENMWUA from the Village's zoning ordinances, and thus from its special use permit process in this instance. *See Armijo*, 1981-NMSC-102, ¶ 3 ("Statutes granting power to cities are strictly construed, and any fair or reasonable doubt concerning the existence of an asserted power is resolved against the city.").

{16}    For the foregoing reasons, we affirm the district court's application of the statutory guidance test, and its dismissal of the Village's complaint.

{17}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**CYNTHIA A. FRY, Judge**